UNITED STATES, Appellee

v.

JOHN G. SQUIRRELL, Corporal, U. S. Army, Appellant

2 USCMA 146, 7 CMR 22

No. 657

Decided January 26, 1953

LT. COL. George M. Thorpe, U. S. Army, and 1ST. LT. Michael E. Mc-Garvey, U. S. Army, for Appellant.

LT. COL. Thayer Chapman, U. S. Army, and CAPT. Irvin M. Kent, U. S. Army, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

Petitioner was tried by general court-martial in Korea for desertion with intent to avoid hazardous duty, namely, combat with the enemy. He was found guilty of the crime as alleged and sentenced to be dishonorably discharged from the service, to forfeit all pay and allowances and to be confined at hard labor for ten years. The assistant judge advocate on the staff of the reviewing authority, because of the petitioner's youth and service, recommended that the execution of the entire sentence be suspended. His immediate superior, the staff judge advocate, believing that the offense merited a more severe penalty, recommended that the sentence be reduced so as to adjudge dishonorable discharge (to be suspended), total forfeitures and confinement at hard labor for two years. The convening authority adopted the latter recommendation and the sentence was reduced accordingly. A board of review in the office of The Judge Advocate General of the Army affirmed the findings and sentence and accused petitioned this Court for a review of his conviction. Subsequent to the filing of his petition, The Judge Advocate General of the Army suspended the unexecuted portion of petitioner's sentence and re-stored him to a duty status. We particularly mention and commend these grants of clemency as it appears to us that, while the evidence permitted a finding of guilty, an overly severe sentence would have been served by the accused in view of his early appreciation of his wrongdoing and his prompt attempt to right the wrong.

We granted the petition for review and authorized arguments on the following issues: (1) Is the evidence sufficient to sustain the findings of guilt? (2) Did the law officer err in suggesting and permitting an amendment to the charge and specification? (3) Was there a constructive condonation of the offense charged? We shall dispose of these issues in their reverse order and relate the evidence only in so far as it is important to the particular question being discussed.

Since the Court granted this petition for review, we have settled the principles applicable to the defense of condonation. In United States v. Minor (No. 315), 4 CMR 89; United States v. Walker (No. 352), 4 CMR 93; and United States v. Perkins (No. 478), 4 CMR 94, all decided July 30, 1952, we specifically held that condonation was

**147**

an affirmative defense which must be raised at the trial level and that the restoration to duty must be ordered by an officer exercising general court-martial jurisdiction. In view of the fact that in this instance condonation was not suggested until the case was on appeal and in view of the further fact that the record does not disclose any evidence to support legally such a defense, we hold against petitioner on the last issue.

The facts necessary to answer properly the second question are these: The original specification alleged desertion in substantially the following language: that petitioner did, on or about June 25, 1951, with intent to avoid hazardous duty, namely, combat with the enemy, quit his organization. The evidence introduced by the Government indicated that the absence commenced shortly after 11:00 a.m., on June 24, 1951, and this was verified in part by evidence produced by the accused. The law officer, believing there might be a fatal variance between the allegations of the specification and the evidence, inquired as to whether or not the charge should not be amended to conform to the proof. This suggestion prompted trial counsel to make a motion to amend the specification. The motion was resisted by the accused because he contended that the amendment was one of substance and would result in charging the accused with an offense separate and distinct from the one originally alleged. The motion to amend was granted and the law officer then suggested that a continuance would be ordered if counsel for accused believed the amendment prejudiced or misled the defense. In support of his suggestion, the law officer granted the defense a continuance of approximately two hours to prepare any further arguments in support of his objections and to consider the possibility of a further continuance. When the court reconvened, defense counsel did not pursue the matter of a further delay but rather made a motion for a finding of not guilty. This motion was denied and the law officer again inquired as to whether the defense had been misled by the amend-

ment to the specification. Upon being assured that the accused had not been misled and that a continuance was not necessary, the law officer requested information as to whether defense had any evidence it desired to produce. After defense counsel stated that the production of additional evidence was not contemplated, the law officer instructed on the elements of the offense, and the case was submitted to the court for consideration.

The Manual for Courts-Martial, United States, 1951, paragraph 69b, at page 104, provides as follows:

"b. *Defects in charges and specifications.*—(1) *General.*—If a specification, although alleging an offense cognizable by courts-martial, is defective in some matters of form as, for example, that it is inartfully drawn, indefinite, redundant, or that it misnames the accused, or is laid under the wrong article, or does not contain sufficient allegations as to time and place, the objection should be raised by motion for appropriate relief.

"(2) *When accused is not misled.* —If it clearly appears that the accused has not in fact been misled by the form of the charges and specifications, and that a continuance is not necessary for the protection of his substantial rights, the court may proceed immediately with the trial upon directing an appropriate amendment of the defective charge or specification.

"(3) *When accused may be misled.* —If the specification is defective to the extent that it does not fairly apprise the accused of the particular offense charged, the court, upon the defect being brought to its attention, will, according to the circumstances, direct the specification to be stricken and disregarded, or continue the case to allow the trial counsel to apply to the convening authority for directions as to further proceedings, or permit the specification to be amended so as to cure the defect, and continue the case for such time as in the opinion of the court may suffice to en-

able the accused properly to prepare his defense in view of the amendment."

The law officer in suggesting an amendment to the specification must have been actuated by a superabundance of caution. The original specification alleged that the offense occurred on or about June 25, 1951, and the evidence established that it happened on the 24th day of that month. A showing that it occurred on the 24th could have been made under the allegations of the original specification, and a finding that the absence commenced on that date would not have been at variance with the charge. The exact date was not alleged and when the proof showed the offense to have occurred one day before the mentioned date, the variance was not of material importance. Apparently the law officer concluded that the precise date should be alleged, and, if he erred, it was to the benefit of the accused in that it created the impression that the Government must fix the exact date or fail in proving the offense.

Counsel for accused press on us the argument that charges and specifications under the military procedure are similar to indictments under the civilian procedure and that the strict rule against permitting amendments should be enforced. The Government, on the other hand, contends that the more liberal rule applied to amending informations should be the one controlling in our system. We believe the remarks made in United States v. Marker (No. 281), 3 CMR 127, decided May 19, 1952, point the direction this Court is taking in disposing of matters affecting pleadings:

"Fortunately we are no longer bound by the ancient rigor of pleading at common law. It is the modern rule that formal defects in indictments, not prejudicial, will be disregarded. . . . ."

We are not alone in discarding the ancient rigor of amending pleadings as most civilian jurisdictions have relaxed the strictness of the common law principle and the present Federal civilian rule is:

"*Amendment of information.* The court may permit an information to be amended at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced." [Rule 7(e), Federal Rules of Criminal Procedure]

We need not fully embrace the Federal rule at this time as we are not confronted with an amendment of substance. The specification alleged an offense, and, if there were any infirmities in the charge, it was only in that the date was not fixed with particularity. The amendment was permitted to render certain what was believed to have been uncertain, and this type of amendment is specifically authorized by the Manual for Courts-Martial, United States, 1951. Clearly a different offense was not charged as the elements of the offense before and after the amendment were identical. The change, if any, was merely one of form. In addition, a law officer is, by the Manual, granted some discretion in permitting amendments to specifications even though they might involve matters of substance. He is authorized several courses of action, one of which he followed in ruling on this amendment. Before he finally announced his ruling he afforded the accused every reasonable opportunity to protect his rights. He was particularly careful to ascertain whether his ruling would require a change in defense tactics. After being assured that accused was not misled and that no additional evidence would be produced, the law officer had the case proceed. To sustain the contention of the accused, we would be required to find an abuse of discretion by the law officer and no such fault is detectable in this record.

The last issue is more difficult of solution. It concerns the sufficiency of the evidence to sustain the finding of guilty. The evidence necessary to a proper understanding of this problem is as follows: Petitioner was an assistant squad leader, I Company, 19th Infantry, which was located in a reserve area. On the morning of June 24, 1951, his unit was assembled and the company commander

**149**

announced that the regiment had been assigned the mission of leading an attack against the enemy on the following day and that the company would participate. Petitioner was present at the morning formation and knew of the contemplated tactical employment of the company. At about 11:00 o'clock on that morning, he notified his squad leader that he was going over to K Company to visit with a buddy and would return in about ten minutes. He did not rejoin his company until four days later. Prior to his departure for the visit to his friend, accused, to ready the squad for the attack, assisted in checking equipment and distributing ammunition, supplies and rations. The Company loaded on trucks the following morning, June 25, 1951, and moved into position behind another infantry regiment. On the morning of June 26, 1951, the company moved into the attack and suffered a number of casualties. When the company moved out from the reserve area on the morning of the 25th, and the accused was not present, a search was made for him but he could not be found.

The accused did not take the stand to testify but did produce evidence which established that at approximately midnight, June 24, 1951, he turned himself in to the division stockade which was some considerable distance in the rear of the front lines. The evidence of the stockade personnel established that petitioner, together with another soldier, reported in at 11:30 p.m., and said to the sergeant of the compound that "They wanted to turn themselves in for they were AWOL." The accused was retained in the stockade until 4:30 p.m. on June 26, 1951, at which time he was returned to his unit.

An unnecessary amount of difficulty is heaped on tribunals of the military system by the failure of all counsel at the trial level to exploit fully the possibilities of presenting evidence favorable to their side of the dispute. A trial is held for the purpose of affording an opportunity to develop the true situation and too often counsel are content to make a routine and perfunctory showing and to leave with the court-martial a blurred and indistinct picture of what actually transpired. In this particular instance, the pretrial record seems to indicate that there was evidence reasonably available both to the Government and the accused which might have cast more light on the obscure and unknown factor of the intent with which accused left his unit. He was charged with and convicted of a crime involving an intent to avoid hazardous duty and yet it appears that his absence was short and unusual; that he had previously performed his duties under dangerous conditions; that he made a belated attempt to return to duty; and that he subsequently carried on under hazardous circumstances. The nature and manner of performing his services was not shown but it is reasonable to conclude that combat duty, both prior and subsequent to an absence, might, if satisfactorily performed, weigh heavily against a finding that an accused went absent to avoid the hazards of fighting. Counsel should remember that the element of intent must be inferred from acts, conduct or admissions of an accused. It is a mental condition peculiarly within his knowledge and all facts which tend to shed light on his attitude should be developed. More often than not an accused's explanation of his conduct, if at all consistent with his performance, is influential in convincing a court-martial that a finding of not guilty should be returned in cases requiring evidence of specific intent. Because we suggest this, it is not intended to convey the thought that this Court believes an accused must take the witness stand or that he must prove his innocence. It is only intended to suggest that when a situation is presented, such as here, where an accused goes absent without authority for a short period of time, knowing combat is imminent, he cannot expect to escape the logical inference that the impending battle caused his departure unless some other reason is advanced to account for his behavior. It is axiomatic that a person's mental attitude can best be shown by what he does and in this instance, without some explanation, accused's behavior would lead any reasonable person to conclude he was seeking

to avoid the oncoming fight. If he had any other or different reason for leaving, it is buried deep in silence. If it is so buried, a charge we do not level, then his counsel should be severely criticized for inadequate representation. It is conceivable as contended by accused, that evidence favorable to the accused on any or all of the following items might have caused the court-martial to arrive at a different finding: his reasons for not returning from K Company; his acts and conduct during his absence; his explanation for travelling well to the rear; his reasons for turning himself in at the stockade; his previous battle record; and his combat behavior during his service after his return to duty. The trouble we encounter in trying to find merit in the contention is that the record is silent as to any of these matters and this Court, like the trial forum, cannot speculate as to what the evidence might have established had witnesses been called to testify. While we have pointed out the possibilities of developing factors favorable to the accused, in hopes that in other cases we can encourage counsel at the trial level to present facts more fully and better try cases, we must weigh the evidence in this case by the facts we find in the record.

The only element of the offense about which there could be the slightest doubt was the intent of accused. Briefly restated, the record shows the following facts from which an intent to avoid hazardous duty could be inferred. The company commander in the early morning of June 24, 1951, announced to the company that the regiment to which it belonged had been assigned a mission of leading an attack against the enemy on the following morning. Accused was well aware of this mission as after hearing about the plans for the attack, he assisted his squad in preparing for its part in the impending fight. Ammunition was distributed, supplies and equipment checked and other preliminary arrangements were made preparatory to moving out. At approximately 11:00 a.m., the accused informed his squad leader he was going over to K Company to visit with a friend and would be gone for about ten minutes. Some twelve hours later, and much too late to be available for the next morning move, the accused and his companion turned themselves in to the division stockade which was located some considerable distance in rear of the front lines. The exact mileage is not disclosed by the testimony but the stockade was located at the division rear command post and the distance was sufficient to require five hours' driving by jeep to travel it. While the time of day or night, road and traffic conditions, and other factors, would have a bearing on the speed a jeep could be driven, anyone who reads the record is convinced that both parties were in agreement that the distance was substantial and that it was so great that it was impossible for the accused to be returned in time to leave with his unit on the following morning. While the record establishes that the unit of the accused did not commence fighting on the following morning because it went into position behind one of the regiments in assault position, it did become seriously engaged on the next day. However, when accused departed the only information available to him and all other members of the command was that the attack would take place on the morning following his day of departure. These facts are not in dispute and are sufficient to permit the court to return the finding it did.

It is contended by accused that his act in turning himself in after only a short absence precludes a finding of guilty of desertion. His voluntary return is an element in his favor but it does not compel a finding of not guilty. His intent was formed prior to or at the time of his leaving the area and a finding based on his acts and conduct then is not fatally without support because of the fact that after giving the matter serious consideration, accused may have changed his mind and turned himself in to a military establishment. Particularly is this true when the turn-in time was so late and the place was so far removed from the front lines that accused could not be present with his unit to assist in the contemplated attack. That proper con-

sideration was given to repentance, not as a defense to the crime, but as an extenuating circumstance, is well attested by the clemency exercised by the reviewing authorities.

The decision of the board of review is affirmed.

Judge BROSMAN concurs.

QUINN, Chief Judge (dissenting):

I dissent.

The majority here decides that proof alone of absence without leave while in the face of prospective combat duty will support a conviction for desertion with intent to avoid hazardous duty. With this theory I cannot agree. Admittedly, the specific intent element involved in all desertion offenses is difficult of direct proof. Cf. United States v. Yarborough and Marshall (No. 443), 5 CMR 106, decided September 12, 1952. However, it requires something more than the equivocal act of unauthorized absence under circumstances such as are involved in the instant case.

There is no proof in this record that the accused absented himself specifically in order to avoid the hazardous duty to which he was assigned. That his absence resulted in avoidance of that duty is not sufficient—the offense is predicated upon a mental intent, not upon a resulting situation. It is noteworthy, to me, that the accused turned himself in and reported himself AWOL some twelve hours after the original absence at a place where he could have been returned to his own company prior to the time that it moved into the attack. I am not convinced, from the record, of the impossibility of returning this accused to his unit prior to the scheduled departure time. But even if this be conceded, the accused surely could not have been so naive as to assume that by staying away twelve hours he could thereby avoid all combat duty. What would be gained by missing the first day's action only to be involved on the following day and for days thereafter? It seems to me that the accused's action in turning himself in within twelve hours is entirely inconsistent with any intent to avoid participating in his company's prospective combat action. It is relevant in this respect, that the accused, both before and after this incident, performed combat duties both competently and continuously.

Of course, it is possible that the accused originally absented himself with the alleged intent and later repented. If so, he is nevertheless guilty. However, it is to me equally as reasonable to assume that he did leave in order to visit a friend prior to impending combat and that this visit lasted too long. Perhaps the accused and his friend became involved in some interesting activity.

In short, I find myself completely unable to reconcile the majority opinion in this case with our previous decisions which reverse for insufficiency of the evidence in situations where there is circumstantial evidence and equivocal acts. See United States v. O'Neal (No. 25), 2 CMR 44, decided February 7, 1952; United States v. Shull (No. 45), 2 CMR 83, decided February 18, 1952; United States v. Horst (No. 822), 4 CMR 45, decided July 9, 1952; and United States v. Yarborough and Marshall, supra.

I must again inveigh against the theory that there is some burden on the accused to "explain" his conduct in order to avoid being convicted of the crime charged. This reversal of the time-honored presumption of innocence becomes even worse when added to the feeling, unfortunately present in the minds of many service officers, that "the accused must be guilty or else this general court-martial would never have been ordered." However, I have already spelled out in detail my views concerning this theory and it is unnecessary to repeat them here. See United States v. McCrary (No. 4), 1 CMR 1, decided November 8, 1951.

I would reverse the board of review and set aside the conviction for insufficiency of the evidence to support the findings.