UNITED STATES, Appellant

v

WILLIE SPANN, Stewardsman, U. S. Navy Reserve, Appellee

10 USCMA 410, 27 CMR 484

No. 12,724

Decided May 1, 1959

*Major Ted H. Collins*, USMC, argued the cause for Appellant, United States.

*Commander John P. Gibbons*, USN, argued the cause for Appellee, Accused. With him on the brief was *Commander James T. Warns*, USN.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

Charged with desertion, begun during World War II and terminated by apprehension in May 1958, the accused was convicted by a general court-martial of unauthorized absence. The board of review set aside the conviction on the ground that the law officer erred to the prejudice of the accused by not advising him he had a right to plead the statute of limitations as a bar to prosecution. It directed a rehearing to permit the Government to show whether the statute of limitations had been tolled under Article 43(d), Uniform Code of Military Justice, 10 USC § 843. By certificate filed under the provisions of Article 67(b)(2), The Judge Advocate General of the Navy asked this Court to review the correctness of the law officer's action and, alternatively, the appropriateness of the disposition directed by the board of review.

The accused was arraigned on the current form of charge sheet (DD Form 458, December 1, 1955). In the blank space titled "DATE" on the first page of the form appears the date "30 June 1958." Page two on the inside of the four-page form, provides for a statement of the charge and specification. It is blank. However, attached to the page are two letter-orders. The first is dated May 23, 1947, and indicates that on that day, the Secretary of the Navy ordered the accused to be tried by general court-martial on a charge captioned "DESERTION IN TIME OF WAR." The specification of the charge alleges that the accused deserted the Naval service on or about June 9, 1945, and "has ever since remained in desertion." The second order is dated June 23, 1958. In pertinent part it reads as follows:

"2. The Secretary of the Navy hereby amends the original charge and specification preferred against Willie SPANN, 556 66 61, steward's mate first class, U. S. Naval Reserve, on 23 May 1947 to allege the manner and date of return to naval jurisdiction.

"The original charge and specification is amended by adding the following words after the word 'desertion': 'until he was apprehended and delivered to naval authorities on 14 May 1958.

• • • • •

"4. Pretrial investigation shall be made in accordance with Article 32, UCMJ, and paragraph 34, MCM, 1951, with respect to the original charge and specification as amended, and, if the facts disclosed by such investigation should warrant, subject man will be tried by general court-martial appointed by your order. The order of the Secretary of the Navy which directed that subject named man be tried before a general court-martial convened by order of the Commandant, Potomac River Naval Command, is hereby modified accordingly.

"5. The order for trial and the charge and specification preferred by the Secretary of the Navy on 23 May 1947, and the original of this letter shall be made a part of the record of trial in the event trial by court-martial is deemed warranted."

From page three of the form it appears that the charge sheet was sworn to on June 30, 1958, by A. J. Green, Yeoman Second Class, who is listed as the accuser. The charge sheet was received on July 3, 1958, by the Commanding Officer, U. S. Naval Receiving Station, Brooklyn, New York, the officer exercising summary court-martial jurisdiction over the accused. By first indorsement, dated July 8, 1958, the charges were referred to trial by the Commandant, Third Naval District.

Examining the date of the absence and the date of the charge sheet, the

**411**

board of review concluded the statute of limitations had run against the offense charged.[1] To reach this conclusion, the board of review relied upon its interpretation of our opinions in United States v Rodgers, 8 USCMA 226, 24 CMR 36, and United States v French, 9 USCMA 57, 25 CMR 319. Neither case fits the present situation. In fact the course of action followed in this case was apparently intended to avoid the procedural deficiency noted in *Rodgers* and *French*.

*Rodgers, French,* and this case began the same way. In each, appropriate action was taken to stop the running of the statute of limitations. In *Rodgers* and *French*, the original charge sheet was submitted to the summary court officer to toll the running of the statute of limitations in accordance with Article 43(b) of the Uniform Code. Later this charge sheet was *replaced* by a new charge sheet which set out the charge and specification in different form. Only the new charge sheet was referred to trial. On its face, this charge sheet established that the statute of limitations had run against the offense in issue. Accordingly, we held that the law officer should have advised the apparently uninformed accused of his right to plead the statute as a defense. However, we took care to point out the difference between adding new matter by way of an amendment to the original action and the drafting of a new and different charge sheet. Thus, in the principal opinion in the *Rodgers* case, Judge Ferguson said:

"here we have an entirely new charge sheet with a different convening authority and accuser rather than merely an amendment to the original charge sheet."

There is no new charge in this case. On the contrary, the Secretary's letter-order of June 23 explicitly says that it "amends the original charge and specification" to add the date and manner of the accused's return to military control. If the amendment did not change the nature of the offense, it did not destroy the original order as a bar to the running of the statute of limitations. United States v Brown, 4 USCMA 683, 16 CMR 257.

Although it bears on intent, an essential element of desertion, length of absence is not itself an element of the offense. See United States v Soccio, 8 USCMA 477, 24 CMR 287. Consequently, the addition of the date of termination effected no material change. The manner of termination bears on the severity of punishment in time of peace, but it has no such effect in time of war. Naval Courts and Boards, 1937, § 457, page 235; Manual for Courts-Martial, United States, 1951, paragraph 127c, page 217; Article 4, Articles for the Government of the Navy, 34 USC § 1200. Since the desertion here occurred in time of war, inclusion of the manner of termination of the absence made no substantial difference. In any event, adding the manner of termination effected no change in the nature of the offense.

---

[1] Under the Uniform Code wartime desertion can be punished "at any time without limitation." Article 43(a), Uniform Code of Military Justice, 10 USC § 843. However, as construed by the Attorney General of the United States, Articles 61 and 62 of the Articles for the Government of the Navy provided a shorter period of limitation for desertion in time of war than for desertion in time of peace. CMO 4–1922, page 11; see also United States v Meyer, 1 USCMA 164, 2 CMR 70. The limitation period was two years from the commission of the offense and "the issuing of the order for . . . trial or punishment, unless by reason of having absented himself . . . he [the accused] shall not have been amenable to justice within that period." Article 61, Articles for the Government of the Navy, 34 USC § 1200. The absence saving clause was construed as requiring a showing that the accused was a "fugitive from justice." CMO 2–1946, page 50; CMO 7–1945, pages 306, 307. We are not inclined to review the validity of this construction of the Article. Consequently, we shall consider the case as governed by the Articles for the Government of the Navy; see Manual for Courts-Martial, United States, 1951, paragraph 68c; United States v Brown, 4 USCMA 683, 16 CMR 257.

The charge and specification filed to prevent the running of the statute of limitations merely showed, as it did here, that the accused was still absent. The date and manner of the termination of the absence could only be shown when the accused returned to military control. Adding those matters to the specification at the time of return, does not, in our opinion, destroy the tolling effect of the earlier action.

Considering the letter-orders, the 1958 amendment plainly did not change the original charge against the accused. But what of the 1958 charge sheet? To borrow a phrase from our opinion in United States v Martin, 1 USCMA 82, 84, 1 CMR 82, it represented "the purely formal and ministerial business" of carrying out, under the procedures applicable to the Uniform Code, the prosecution of a charge initiated and tolled in regard to the applicable statute of limitations under the provisions of the Articles for the Government of the Navy. It was not a new charge, or even the redraft of an old one, but merely the vehicle for presenting the old charge under the new procedures. On its face it did not set out a new charge but carried forward the original charge as amended.

The board of review was mistaken in its conclusion that the statute of limitations had run against the offense. It follows that the law officer did not err in failing to advise the accused he could plead the statute as a bar to prosecution. Accordingly, we answer the first certified question in the negative. This answer makes it unnecessary to consider the second certified question.

The decision of the board of review is reversed. The record of trial is returned to The Judge Advocate General of the Navy for submission to a board of review for further proceedings consistent with this opinion.

Judges LATIMER and FERGUSON concur.

