UNITED STATES, Appellant

v

ROBERT L. JOHNSON, Private,
U. S. Marine Corps, Appellee

12 USCMA 710, 31 CMR 296

No. 15,378

March 30, 1962

*Commander Benjamin H. Berry,* USN, argued the cause for Appellant, United States.

*Lieutenant Colonel William H. Bennison,* USMC, argued the cause for Appellee, Accused.

Opinion of the Court

QUINN, Chief Judge:

On his plea of guilty, the accused was convicted by a special court-martial of unauthorized absence of sixteen days

and failure to obey an order, in violation of Articles 86 and 92 of the Uniform Code of Military Justice, 10 USC §§ 886, 892. A board of review set aside the finding of guilty of the order offense on the ground there was an improper amendment of the specification. It set aside the plea of guilty to the absence offense because the president failed to advise the court members that conviction therefor subjected the accused to a punitive discharge, if evidence was received of two or more previous convictions. Under the provisions of Article 67(b)(2) of the Uniform Code, supra, § 867, The Judge Advocate General of the Navy has asked this Court to review the correctness of both aspects of the board of review's decision.

The specification of Charge II, on which the accused was arraigned, alleged that he failed to obey an order to report to the Commanding General, 2d Marine Division, Camp Lejeune, which order it was his duty to obey. The specification further alleges that the order was issued by the commanding officer, Marine Barracks, U. S. Naval Base, Brooklyn, New York. The accused entered a plea of guilty and the plea was accepted after he indicated he understood its meaning and effect and that he was entering it "freely and voluntarily." However, when the president enumerated the elements of the offense in his instructions to the court-martial, the following colloquy occurred:

"DC: The defense would like to enter a stipulation at this point, in that when you read the charges here of the elements of the offenses, I noticed here, that the accused received a lawful order issued by the Commanding Officer, Marine Barracks, U. S. Naval Base, Brooklyn, Is it not so?

"PRES: That is correct.

"DC: That is a mistake. The order was issued by Commanding Officer, Marine Barracks, U. S. Naval Base, Boston, Massachusetts.

"(The service record book of the accused was shown to the president to support this stipulation.)

"PRES: Would the trial counsel correct the specification under Charge II.

"TC: The prosecution accepts the stipulation and corrects the charge. The president: make a change to my instruction in that the order was issued by Commanding Officer, Marine Barracks, U. S. Naval Base, Boston, Massachusetts.

"PRES: The reporter will note for the record that the Specification of Charge II was corrected.

"DC: Other then [sic] that I have no other modification to offer at this time."

In United States v Brown, 4 USCMA 683, 16 CMR 257, we pointed out that a specification may be amended if the change does not result (1) in a different offense or in the allegation of an additional or more serious offense, or (2) in raising a substantial question as to the statute of limitations, or (3) in misleading the accused. Permissible changes may be made by trial counsel or the court at any time before the findings. Manual for Courts-Martial, United States, 1951, paragraphs 44*f*, 69*b*. These requirements substantially accord with those of Rule 7(e), Federal Rules of Criminal Procedure, which authorizes amendment of an information "if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced." See United States v Squirrell, 2 USCMA 146, 7 CMR 22. Applying these rules to the instant case, it is immediately apparent the accused was not misled by the amendment. The defense itself raised the issue and stipulated to the change. Since the date of the alleged violation of the order remained the same, there is no question affecting the statute of limitations. However, discerning "no essential difference" between the nature of the amendment effected here, and the determination in United States v Marsh, 3 USCMA 48, 11 CMR 48, that there was a fatal variance between the allegation and the proof, the board of review concluded the change resulted in a different offense. See also United States v Jones, 8 CMR

551. The board of review erred in this conclusion.

The situation in the *Marsh* case is significantly different from that in the instant case. In *Marsh,* the ▮▮▮▮▮▮ ▮ accused was tried for willful disobedience of the direct order of Captain Sikes, his superior officer. The Government, however, introduced evidence of an order issued by Lieutenant General Hodge. We held there was a fatal variance between the allegation and the proof, and set aside the findings of guilty. Here, the charge is merely that the accused failed to obey an order it was his duty to obey. No personal element colors and permeates the order, as is the case in a charge of willful disobedience of a direct order. Put differently, the offense of failure to obey a lawful order is only incidentally concerned with the person issuing the order; the emphasis is on the existence of the order, the accused's knowledge of it, and a duty to obey its terms. Thus, the offense is materially different from willful disobedience, in that it does not have the "personal" element of the latter offense. We pointed out this distinguishing characteristic in United States v Keith, 3 USCMA 579, 13 CMR 135. We there said: "Where the two offenses are compared in the light of the Code and the Manual, it is readily apparent that the difference between them finds its roots in the personalized nature of the transaction." It is sufficient under Article 92 that the order be "issued by a member of the armed forces." Whether A or B issues the order is, in the usual case, immaterial. We realize, of course, that different persons and different commanders possess varying powers, so that in some situations, perhaps, it might mislead the accused to change the name of the authority issuing the order. See United States v Marsh, supra; United States v Matthews, 8 USCMA 94, 23 CMR 318. But that possibility is not, as we observed earlier, present in this case. Manifestly, therefore, substitution of the title of the issuing authority did not make the offense different from that alleged, and did not, in the circumstances disclosed in this record of trial, prejudice the accused in any way.

712

See United States v Craig, 8 USCMA 218, 24 CMR 28. Accordingly, we answer in the negative the first certified question, which asks whether the board of review was correct in disapproving the finding of guilty of the order charge.

Our answer to the first certified issue makes it unnecessary to consider the second, which is dependent upon it. We return the record of trial to The Judge Advocate General of the Navy for submission to the board of review for reconsideration in the light of this opinion.

Judge KILDAY concurs.

FERGUSON, Judge (dissenting):

I dissent.

It is with regret that I state my inability to concur with my brothers in their ultimate conclusion that the board of review erred in ordering a rehearing with respect to Private Johnson's disobedience of a lawful order, in violation of Uniform Code of Military Justice, Article 92, 10 USC § 892. Nevertheless, with due deference for their approach to the question before us, I am compelled to conclude that whether a charge sheet be treated as an information or—as I believe—an indictment, their action overlooks the fundamental nature of the problem which led the board of review to decide that another trial was necessary.

The accused was charged with disobeying the order of the Commanding Officer, *Brooklyn* Marine Barracks. As the Chief Judge notes, he pleaded guilty and persisted in that plea until the defense counsel, hearing the instructions of the president of the court-martial, became aware of the actual identity of the person alleged to have issued the order. Counsel then brought to the court's attention the fact that accused had disobeyed the order of the Commanding Officer, *Boston* Marine Barracks, and thereafter consented to an amendment of the specification so that it averred the proper officer. Thus, as the change originated with accused, who thereby implicitly and judicially admitted that he had committed the offense set forth in the amended count,

we are not faced with a question of variance between the pleadings and proof but solely with the issue whether the specification was subject to an alteration of this nature at the trial. It is my conclusion that it could not be so changed without reference to the convening authority.

True it is that this Court early indicated a disposition to permit amendments of charges and specifications freely to be made. United States v Squirrell, 2 USCMA 146, 7 CMR 22; United States v Wilson, 2 USCMA 248, 8 CMR 48. Examination of the rationale of the cited opinions, however, indicates that our observations with reference to liberality of amendment were no more than *obiter dicta*. In the *Squirrell* case, the amendment of which we approved was a change in the allegation of the date of the offense from "on or about June 25, 1951," to "on June 24, 1951." It is apparent that the alteration was purely formal, for, as noted in the opinion, the date thus alleged was included in the original averment of "on or about June 25, 1951." United States v Squirrell, supra, at page 149. And in the *Wilson* case, while the amendment was clearly one of substance, it was accomplished only *at the direction of the convening authority,* a process which fully accords with the view to which I adhere. United States v Wilson, supra, at page 252.

The opinions of this Court which follow our decisions in United States v Squirrell and United States v Wilson, both supra, make it quite plain that a charge sheet setting forth specifications and charges is to be treated in the same manner as an indictment in the United States courts. Thus, in United States v Rodgers, 8 USCMA 226, 24 CMR 36, we held that it was necessary to look to the actual charge sheet upon which the convening authority referred the accused's case to trial in order to determine whether the appropriate Statute of Limitations had run. In that case, the Chief Judge, concurring, noted, at page 231:

". . . Until the charge sheet is actually referred to trial, it cannot be compared to an indictment in the civilian community. Very recently, we held that, when justified by the preliminary evidence, the convening authority can change the offense alleged from larceny to robbery. United States v Smith, 8 USCMA 178, 23 CMR 402. A change of such a substantial nature cannot be made in the Federal criminal courts without reindictment by the Grand Jury. See Heald v United States, 177 F2d 781 (CA 10th Cir) (1949); Carney v United States, 163 F 2d 784 (CA 9th Cir) (1947), cert den 332 US 824, 92 L ed 400, 68 S Ct 165. The Smith case clearly stands for the principle that the charge sheet referred for trial is the only charge sheet upon which the trial can proceed. See Articles 34, Uniform Code of Military Justice, 10 USC § 834."

See also United States v French, 9 USCMA 57, 25 CMR 319, and United States v Spann, 10 USCMA 410, 27 CMR 484.

I have no doubt of the accuracy of the Chief Judge's comparison of a charge sheet to an indictment, once the former is referred to trial. Both contain the formal averment of the charges. Both are impartially "returned" by an impartial authority—the one constitutional, the other statutory—which has examined the evidence in light of the law and reached a conclusion concerning an accused's offenses against the United States. Indeed, the return of the indictment is endorsed on the bill in a manner quite parallel to the Manual's requirement for reference of the charge sheet to trial by special court-martial. Cf. Code, supra, Article 34, 10 USC § 934. Moreover, were it not for our according the charge sheet a status similar to an indictment, our conclusions in United States v Rodgers, United States v French, and United States v Spann, all supra, would simply be meaningless.

It is undeniable that indictments in the United States courts may not be substantively amended except by reassembly of the grand jury itself. Carney v United States, 163 F2d 784 (CA 9th Cir) (1947), cert den 332 US 824, 92 L

ed 400, 68 S Ct 165; Edgerton v United States, 143 F2d 697 (CA 9th Cir) (1944); United States v Krepper, 159 F2d 958 (CA 3d Cir) (1946), cert den 330 US 824, 91 L ed 1275, 67 S Ct 865. In like manner, it would clearly appear that a military charge should not be changed in substance unless it is returned to the convening authority. Indeed, that is the precise practice which was involved in United States v Wilson, supra, and United States v Smith, 8 USCMA 178, 23 CMR 402, the latter case being relied upon by the Chief Judge in United States v Rodgers, supra. But, even if the charges be compared to an information, there can be no amendment to allege an offense different from that originally stated. Rule 7(e), Federal Rules of Criminal Procedure. The ultimate question to be decided, therefore, is whether the change made in the specification before us is one of substance.

It is in answering this question that our cases regarding material variance are of assistance, for where such variance exists, it must be concluded that a substantive change has been made by the amendment. In short, as noted by the Federal courts, an indictment is improperly amended when it is altered to charge an offense different from that found by the grand jury. United States v Krepper, supra.

In United States v Marsh, 3 USCMA 48, 11 CMR 48, we squarely held that proof accused was guilty of willful disobedience of the order of one officer did not establish his guilt of disobeying the same order issued by another officer. Cf. United States v Matthews, 8 USCMA 94, 23 CMR 318. Thus, if the charge here were one of willful disobedience, it would seem beyond doubt that the amendment was improper. There is no reason why the result should be different because the offense charged is the lesser crime of failure to obey a lawful order under Code, supra, Article 92. Admittedly, the only distinction between the two offenses is *scienter*, and, indeed, we set aside a conviction of this lesser offense in United States v Matthews, supra, on the basis of our decision in the *Marsh* case. In short, United States v Marsh, supra,

stands for the proposition that one does not prove *disobedience* of an order issued by Colonel A by proof that accused disobeyed the command of Colonel B. That same element is present in order offenses under Code, supra, Article 92, and I must, therefore, reject the position taken in the principal opinion. Having reached that conclusion, it follows that I believe changing the identity of the officer issuing the order in the specification before us changed the nature of the offense and was, therefore, an amendment not authorized without reference of the charge to the convening authority. United States v Wilson, supra; United States v Rodgers, supra.

One last matter deserves attention. In this case, the amendment was sought by the defense counsel in connection with his client's plea. In my opinion, this factor should not lead us to affirm the findings of guilty. The accused was represented by an officer quite without legal qualifications. Hence, we may not enforce the doctrine of waiver. United States v Kelley, 7 USCMA 584, 23 CMR 48; United States v Anderson, 8 USCMA 603, 25 CMR 107. But, more importantly, amendments of this nature cannot be made even at the instance of the accused. Thus, in United States v Fawcett, 115 F 2d 764 (CA 3d Cir) (1940), it was pointed out that the rule forbidding substantive changes in indictments required reversal "even if the defendant agrees that the facts stipulated should have the same effect as if set forth in the indictment." United States v Fawcett, supra, at page 766. To the same effect, see United States v Norris, 281 US 619, 74 L ed 1076, 50 S Ct 424 (1930). For these reasons, I can find no basis for affirmance in the fact that the amendment resulted from the efforts of accused's untutored representative.

The second certified question inquires whether the board of review was correct in also setting aside accused's plea of guilty to absence without leave because of the failure of the president to advise the accused upon receiving his plea, or at least prior to sentencing, that, if evidence of two previous con-

714

victions was received, the maximum permissible punishment might include a bad-conduct discharge. See United States v Zemartis, 10 USCMA 353, 27 CMR 427, and United States v Downing, 11 USCMA 650, 29 CMR 466. As, at the time of his plea and the time of the presentencing procedure, accused was faced with charges that permitted imposition of a bad-conduct discharge without regard to evidence of previous convictions, it is obvious that the president was not required to give the instruction necessitated by our holdings in the *Zemartis* and *Downing* cases. To hold otherwise would require that officer to possess sufficient clairvoyance to foretell that part of the findings of guilty would be set aside on appeal. That prescience is denied even to appellate judges. Accordingly, I would answer the second certified question in the negative.

I would set aside the decision of the board of review with respect to the charge of unauthorized absence and remand the case with direction either to affirm the findings of guilty of that charge and reassess the sentence or to direct a rehearing on the disobedience count and the penalty.