UNITED STATES, Appellee,

v.

Private First Class Jessie G. LONGMIRE, 264–67–3587, United States Army, Appellant.

ACMR 9201371.

U.S. Army Court of Military Review.

11 Jan. 1994.

For Appellant: Captain Silas R. DeRoma, JAGC (argued); Lieutenant Colonel James H. Weise, JAGC, Major James M. Heaton, JAGC (on brief); Captain Michael A. Egan, JAGC.

For Appellee: Captain Kenneth G. Wilson, JAGC (argued); Colonel Dayton M. Cramer, JAGC, Major Joseph C. Swetnam, JAGC,

Captain Robert J. Walters, JAGC (on brief); Major James L. Pohl, JAGC.

Before WERNER, Senior Judge, and LANE and RUSSELL, Appellate Military Judges.

## OPINION OF THE COURT

WERNER, Senior Judge:

Contrary to his pleas, the appellant was convicted by a special court-martial composed of a military judge sitting alone of failing to obey a lawful order and simple assault; he also pleaded guilty to negligently discharging a firearm in violation respectively of Articles 92(2), 128, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892(2), 928, and 934 (1988) [hereinafter UCMJ]. He was sentenced to a bad-conduct discharge, confinement for two months, forfeiture of $518.10 pay per month for two months, and reduction to Private E1. The convening authority approved the sentence but reduced the forfeitures to $518.00 pay per month for two months.

At issue is whether the military judge abused his discretion, contrary to Rule for Courts–Martial 603 [hereinafter R.C.M.], by allowing the government, over the appellant's objection, to amend the disobedience specification after the appellant had been arraigned. At his arraignment on 20 April 1992, the appellant requested and received a continuance prior to entering pleas or making motions. On the morning of 27 May 1992, the defense counsel filed a motion to dismiss the disobedience specification on grounds that the order allegedly violated was not punitive. When the trial recommenced later that day, the trial counsel moved to amend the disobedience specification arguing that, as the amendment did not change the substance of the offense, it constituted a permissible "minor change" under R.C.M. 603(c). The appellant objected to the amendment on grounds that the amendment effected an impermissible "major change" contrary to R.C.M. 603(d) and that he was not prepared to defend himself against the amended specification. The military judge overruled the appellant's objections and subsequently convicted him of disobeying an order as alleged in the amended specification.

We hold that the amendment of the disobedience specification in this case effected a major change thereto and that the military judge abused his discretion by permitting the amendment over the appellant's objection.

The specification in question originally alleged that the appellant,

having knowledge of a lawful order issued by Colonel John J. Ellis, Commander, 1st Brigade, to wit: paragraph 2(a), Enclosure 2, POW Brief, to 9th Regiment POW Registration Policy, dated 9 April 1991, an order which it was his duty to obey, did, at Fort Ord, California, on or about 7 March 1992, fail to obey the same by wrongfully having a .25 caliber semi-automatic weapon in a military billets, instead of storing it in the unit's armsroom.

The amended specification alleged that the appellant,

having knowledge of a lawful order issued by Captain Jeffrey A. Farnsworth to HHC, 13th Engineer Battalion, dated 15 May 1991, an order which it was his duty to obey, did, at Fort Ord, California, on or about 7 March 1992, fail to obey the same by wrongfully having a .25 caliber semi-automatic weapon in a military billet, instead of storing it in the unit arms room.

Colonel Ellis' order, contained in Enclosure 2 to the POW (Privately Owned Weapons) Brief, provided that all soldiers living in certain military quarters (barracks, bachelor quarters (BEQ/BOQ), or guest house) "must store firearms, bows, and ammunition in the unit arm's [sic] room." Captain Farnsworth's order, contained in a written memorandum for members of his unit, provided that "POW's and ammunition will not be stored in troop billets/BEQ/BOQ, or in guest housing. All POW's, if approved by Provost Marshall [sic], will be secured in unit arms room, or in ON/OFF Post Family housing."

Rule for Courts–Martial 603 sets out procedures for changing charges and specifications. Amendment is permissible depending on the nature of the change and when it is made. The rule distinguishes between major and minor changes and changes made before

or after arraignment. Minor changes are those designed to correct inartful drafting of charges, misnaming of the accused, improper alleging of articles of the code, or other trivial mistakes. Major changes "add a party, offense, or substantial matter not fairly included in those previously preferred, or which are likely to mislead the accused as to the offenses charged." R.C.M. 603(a). In general, minor changes to charges and specifications may be made at any time prior to arraignment. R.C.M. 603(b). After arraignment, only the military judge may permit minor changes to be made provided "no substantial right of the accused is prejudiced." R.C.M. 603(c). In contrast, major changes "may not be made over the objection of the accused unless the charge or specification affected is preferred anew." R.C.M. 603(d).

■ Two fundamental legal concepts underlie the limitations contained in R.C.M. 603 on making major changes after the accused has been arraigned. One involves a basic principle of due process: an individual should not be made to face criminal charges without having been notified of what he must defend against and without having been protected against double jeopardy. *United States v. Wilkins*, 29 M.J. 421, 424 (C.M.A.1990); *United States v. Hopf*, 1 U.S.C.M.A. 584, 5 C.M.R. 12 (1952). *See also, United States v. Sell*, 3 U.S.C.M.A. 202, 11 C.M.R. 202 (1953). The other concerns court-martial jurisdiction: a court-martial is without power to determine an individual's guilt or innocence of criminal charges unless those charges have been referred to trial by competent authority. R.C.M. 201(b)(3) and 601(a). *Wilkins*, 29 M.J. 421; *United States v. Vanderpool*, 4 U.S.C.M.A. 561, 16 C.M.R. 135 (1954).

■ Whether a post-arraignment change to a specification meets due process requirements depends on whether the accused is prejudicially misled by the amendment of the charges and whether he is protected against double jeopardy. The Court of Military Appeals has consistently held that "a specification may be amended [after arraignment] if the change does not result (1) in a different offense or in the allegation of an additional or more serious offense, or (2) in raising a substantial question as to the statute of limita-

tions, or (3) in misleading the accused." *United States v. Johnson*, 12 U.S.C.M.A. 710, 31 C.M.R. 296, 297 (1962), *citing, United States v. Brown*, 4 U.S.C.M.A. 683, 16 C.M.R. 257 (1954). *See also United States v. Cooper–Tyson*, 37 M.J. 481 (C.M.A.1993); *United States v. Brown*, 34 M.J. 105, 109–10 (C.M.A.1992).

For example, post-arraignment changes in the alleged time or date of an offense are permissible since they normally do not affect the substance of the offense, preclude invocation of the statute of limitations, or mislead the accused as to that which he must defend against. *United States v. Hunt*, 37 M.J. 344 (1993); *Brown*, 16 C.M.R. 257; *United States v. Squirrell*, 2 U.S.C.M.A. 146, 7 C.M.R. 22 (1953). On the other hand, it is not permissible to amend the specification after arraignment by changing the identity of an alleged robbery victim, *United States v. Dozier*, 38 C.M.R. 507 (A.B.R.1966), *pet. denied*, 38 C.M.R. 441 (C.M.A.1967); changing the alleged value of property taken from a robbery victim, *United States v. Wilkins*, 45 C.M.R. 638 (A.C.M.R.), *pet. denied*, 45 C.M.R. 929 (C.M.A.1972); or adding an element of an offense, *United States v. Jones*, 50 C.M.R. 724 (A.C.M.R. 1975).

■ When we compare the initial and amended specifications in this case, we find they are identical as to the codal provision the appellant allegedly violated, Article 92(2), UCMJ; and the misconduct by which the appellant allegedly violated that provision, the appellant's possession on or about 7 March 1992 of a .25 caliber semiautomatic weapon in a military billets instead of storing it in the unit arms room. Moreover, the amendment did not alter the maximum punishment imposable. However, the specifications are different in two important particulars: the individual issuing the order, Colonel Ellis versus Captain Farnsworth; and the identity of the document each officer employed to issue the order the appellant allegedly violated, publication of an enclosure to a policy directive dated 9 April 1991 versus a publication of a unit memorandum dated 15 May 1991. These differences are substantial under the circumstances of this case.

In *United States v. Johnson*, 12 U.S.C.M.A. 710, 31 C.M.R. 296 (1962), the Court of Military Appeals held that, in a prosecution under Article 92(2), an amendment of a specification after arraignment that changed the title of the authority issuing the order was not a material change that warranted setting aside the finding of guilty. The court observed that "the offense of failure to obey a lawful order is only incidentally concerned with the person issuing the order; the emphasis is on the existence of the order, the accused's knowledge of it, and a duty to obey its terms." *Id.*, 31 C.M.R. at 298. Since the gravamen of the offense, disobedience of a lawful order, was unaltered by the amendment to the specification, there was no significant difference between the original and amended specification. The court acknowledged that "in some situations, perhaps, it might mislead the accused to change the name of the authority issuing the order." (Citations omitted.) But that possibility did not exist in *Johnson* where the accused's counsel stipulated to the amendment, the accused pled guilty, and was not misled.

Similarly, in *United States v. Cooper–Tyson*, 37 M.J. 481, the court determined that waiver applied to bar an appellate challenge to an amendment to a specification which changed the identity of a proscribed drug. The court found no harm to the appellant as she pleaded guilty, did not object to the amendment but in fact requested it, and there was no increase in the maximum punishment.

The case before us is quite different. Here the accused pled not guilty, his counsel objected to the change, and predicated her objection on grounds that she was unprepared to defend against a specification grounded on an order from Captain Farnsworth. A potential defense to disobedience of a lawful order is that the accused lacked knowledge of the order. *United States v. Huff*, 15 U.S.C.M.A. 549, 36 C.M.R. 47 (1965); Manual for Courts–Martial, Part IV, para. 16c(2)(b). Another possible defense, one that the appellant raised by motion the morning of the trial, is that the order was not punitive. *See United States v. Nardell*, 21 U.S.C.M.A. 327, 45 C.M.R. 101 (1972). Both defenses are fact specific and dependent upon the substance of the order set out in the specification referred to trial.

Unlike the situation in *Johnson*, the amendment to the specification did not merely change the issuing authority. It also changed the manner in which the order was issued. Under the circumstances, this subverted whatever efforts the defense had made prior to trial to investigate the facts and research the law concerning the lawfulness of the original order and the appellant's knowledge of it. At the same time, the defense was deprived of the opportunity to conduct a similar inquiry with respect to the amended order. The fact that the amendment was proffered by the trial counsel after the trial defense counsel had served the defense's motion to dismiss the original specification on him, suggests that the trial counsel believed the motion had merit. The proper course of action would have been for the government to move for a continuance to enable the convening authority to refer the amended specification to trial if he decided to do so. Instead, the means chosen to effect the change, an in-court amendment over the objection of the appellant, was not proper since it affected the appellant's ability to defend against the allegation against him.

▇ The amendment of the specification without the approval of the convening authority also brings into question the court-martial's jurisdiction over that offense. Unlike errors involving procedural due process, jurisdictional errors are generally not waived by a failure of the defense to object at trial. *United States v. Murray*, 25 M.J. 445 (C.M.A.1988); *but see United States v. Lockwood*, 15 M.J. 1 (C.M.A. 1983). The Court of Military Appeals has recognized that, in the 1984 Manual for Courts–Martial, referral of a charge to trial by a competent authority is a jurisdictional prerequisite. *Wilkins*, 29 M.J. 421; R.C.M. 201(b)(3). Referral occurs when the convening authority personally orders that charges against an accused be tried by a specified court-martial. This is normally accomplished by an appropriate notation on the charge sheet (express referral). It may also occur in other ways that are functionally equivalent, such as by entering into a pretrial

agreement to refer certain charges to a specified court-martial (constructive referral). *Id.* at 424. The holding in *Cooper–Tyson* suggests that a guilty plea alone may be sufficient to defeat a post-trial jurisdictional challenge to a major change to a specification where the offense charged and its amendment are closely related and where the maximum punishment is not increased by the amendment. 37 M.J. at 482–83, *citing, United States v. Epps,* 25 M.J. 319 (C.M.A.1987); *United States v. Felty,* 12 M.J. 438 (C.M.A. 1982). (Arguably, this could be termed an "immaculate referral.") *See United States v. Moore,* 36 M.J. 795 (A.C.M.R.1993).

■ The record establishes that the convening authority did not personally refer the amended specification to trial either expressly by his personal order or, constructively, by its functional equivalent. Moreover, the appellant did not expressly or implicitly, by pleading guilty, waive objection to the amended specification but, to the contrary, strongly contested it by pretrial motion. We therefore conclude that the court-martial did not have jurisdiction over the amended specification and that it must be set aside.

Our action renders the other assigned errors relating to the disobedience specification moot. We have considered the remaining assigned error filed by the appellant and find it to be without merit.

The findings of guilty of Charge I and its Specification are set aside and that Charge and its Specification are dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted and R.C.M. 1003(d)(3), the court affirms only so much of the sentence as provides for a bad-conduct discharge, confinement for two months, forfeiture of $518.00 pay per month for one month and reduction to Private E1.

Judge LANE concurs.

RUSSELL, Judge (Concurring in the result).

I agree with my brethren that the change complained of was a "major" change, that, as a matter of due process, required a new preferral pursuant to the mandate of R.C.M. 603(d).

The gravamen of the disobedient conduct charged in the original specification was virtually identical to the disobedient conduct charged in the changed specification. However, the shift in focus from one written order to another changed the essential character of the original charge. Examination within the four corners of the two orders clearly reveals that the proofs for notice, legality, applicability to the accused and punitiveness would be substantially different for each. Therefore, given the last minute nature of this major variance, the accused was not fairly placed on notice of the actual offense that he was to defend against.

I write separately to state my views regarding the jurisdictional implications of the changed specification. As Senior Judge Werner implies in the majority opinion, R.C.M. 603 lumps as "major" both those changes involving due process with those involving jurisdictional defects. Upon defense objection, the rule dictates the remedy of a new preferral for any major change, whether or not the major change is so profound as to deprive the court of jurisdiction. In other words, the rule operates here to require a new preferral, even if jurisdiction is intact and a mere delay in trial would suffice to cure prejudice from a lack of fair notice.

Therefore, inasmuch as this case is governed by the simple dictate of R.C.M. 603, no useful purpose is served by exploring the maze of pre-rule common law that sought to define when a changed specification deprives a court-martial of jurisdiction. Moreover, I do not share my brothers concern, in dicta, that *United States v. Cooper–Tyson,* 37 M.J. 481 (C.M.A.1993), may be interpreted to establish a new rule of "immaculate referral" that would serve to waive real jurisdictional defects. *Cooper–Tyson,* a guilty plea case, is not instructive in the case at bar. I see it as simply applying the doctrine of waiver to a nonjurisdictional due process claim. *See generally United States v. Wilkins,* 29 M.J. 421, 424 (C.M.A.1990) (referral is a jurisdictional prerequisite).