UNITED STATES, Appellee

v

THEODORE A. RODGERS, Private First Class, U. S. Marine Corps, Appellant

8 USCMA 226, 24 CMR 36

No. 9403

Decided September 13, 1957

*Commander Charles Timblin,* USN, argued the cause for Appellant, Accused.

*Major Charles R. Larouche,* USMC, argued the cause for Appellee, United States. With him on the brief was *Commander Guilbert W. Martin,* USN.

## Opinion of the Court

HOMER FERGUSON, Judge:

The single issue before us is whether the statute of limitations had run as to the specifications of Charge III. The accused was charged with, and pleaded guilty to, an unauthorized absence of five days' duration occurring in December 1952, a violation of Article 86, Uniform Code of Military Justice, 10 USC § 886 (Charge I). He was also charged with, pleaded not guilty to, but convicted of, two specifications alleging desertion, in violation of Article 85, Uniform Code of Military Justice, 10 USC § 885, from the periods of December 13, 1952, to January 23, 1953, and from January 26, 1953, to June 2, 1956, respectively (Charge II). Under

Charge III, he was found guilty—despite his plea to the contrary—of two specifications alleging the failure to obey a lawful order to report to his unit, in contravention of Article 92, Uniform Code of Military Justice, 10 USC § 892. It is these two specifications upon which the issue granted was based. Specification 1 of Charge III alleged that the accused had failed to obey an order "on or about 13 December 1952" and specification 2 alleged another failure to obey "on or about 26 January 1953."

The charge sheet upon which the accused was tried was dated July 3, 1956, and prepared at Camp Pendleton, California, the place of trial. These charges

**227**

were received by the officer exercising summary court-martial jurisdiction the same day, a date obviously more than two years after the commission of the offenses alleged in the specifications of Charge III. Article 43(c), Uniform Code of Military Justice, 10 USC § 843, provides:

"(c) Except as otherwise provided in this article, a person charged with any offense is not liable to be tried by court-martial or punished under section 815 of this title (article 15) if the offense was committed more than two years before the receipt of sworn charges and specifications by an officer exercising summary court-martial jurisdiction over the command or before the imposition of punishment under section 815 of this title (article 15)."

It is well established in military jurisprudence that whenever it appears the statute of limitations █ has run against an offense, the court "will bring the matter to the attention of the accused and advise him of his right to assert the statute unless it otherwise affirmatively appears that the accused is aware of his rights in the premises." Paragraph 68c, Manual for Courts-Martial, United States, 1951. This Manual provision is substantially repeated in paragraphs 53h and 74h, Manual for Courts-Martial, supra. Service boards of review have consistently applied this well-settled doctrine on numerous occasions and have held it to be reversible error for a law officer to fail to advise an apparently uninformed accused of his right to interpose the statute or to fail to determine if there has been a conscious waiver by him of his right to do so. United States v Snyder, 15 CMR 856; United States v Sparks, 15 CMR 584; United States v Rowland, 14 CMR 649; United States v Berry, 14 CMR 396. When we look to the record in the instant case, we find nothing which suggests that the accused was aware of his rights in the premises and his failure therefore cannot possibly operate as a waiver. Accordingly, we conclude that the law officer erred in failing to advise this uninformed accused of his right to plead the statute in bar of trial and punishment.

One further matter merits consideration. Found among the allied papers in the record of trial—in addition to the charge sheet dated July 3, 1956—is another charge sheet bearing the date of November 8, 1954, and prepared at Headquarters, U. S. Marine Corps, Washington, D. C. This earlier charge sheet lists substantially the same offenses as those contained in the charge sheet of July 3, 1956, upon which the accused was tried. The earlier charges were received by an officer exercising summary court-martial jurisdiction on November 10, 1954, a date less than two years after the alleged commission of the offenses found in specifications 1 and 2 of Charge III. We suppose that this earlier charge sheet was drafted and charges subsequently filed for the express purpose of tolling the statute of limitations, as to the specifications of Charge III, against which only a two-year statute of limitations applies.

The redrafted charges were then prepared for the purpose of showing apprehension and termination of the absence alleged in specification 2 of Charge II. From these circumstances the Government argues that the statute of limitations was tolled by the first charge sheet, which became a part of the record and that it is "clearly inferable" that both charge sheets were exhibited to the accused by the pretrial investigating officer. It is then contended that the accused, by not questioning the validity of the first charge sheet, is precluded from doing so now. This argument need not detain us for long, for the obvious answer █ is that the record must affirmatively show that the accused was made aware of his right to assert the statute or that having been aware he consciously waived that right. Here the record is silent as to any indication that the accused was aware of his rights. The charge sheet of July 3, 1956, was the only one before the law officer and the court. Furthermore, we do not presume that the accused waived a substantial right which the record fails to show he even knew of.

228

The Government calls our attention to, and places great reliance upon, the decision of an Air Force board of review in the case of United States v Detion, 13 CMR 846, as authority for their position. In that case the charge sheet revealed that two of the offenses alleged had occurred more than two years prior to the date the charges were received by the officer exercising summary court-martial jurisdiction. The trial defense counsel moved to dismiss those two offenses on the ground that the statute of limitations had run. The law officer was thereupon presented a second charge sheet by trial counsel, found in the allied papers, which indicated that the charges were originally received by the officer exercising summary court-martial jurisdiction within the period of the statute of limitations. The offenses contained in both charge sheets were exactly the same. The law officer then denied defense's motion. On appeal, the board, in holding that the law officer's ruling was proper, said:

"The concept of trying an accused upon charges preferred after the applicable statute of limitations has run, where such charges are a redraft of charges preferred within the period of the statute of limitations, is not new. Such procedure is reflected in the following provisions of the United States Code pertaining to reindictments:

'Whenever an indictment is dismissed for any error, defect or irregularity with respect to the grand jury, or is found otherwise defective or insufficient for any cause, after the period prescribed by the applicable statute of limitations has expired, a new indictment may be returned not later than the end of the next succeeding regular term of such court, following the term at which such indictment was found defective or insufficient, during which a grand jury shall be in session which new indictment shall not be barred by any statute of limitations.' June 25, 1948, c. 645, 62 Stat 828."

The Federal statute relied upon by the board in the Detion case is entitled:

"Reindictment where ■ fect found after period of limitations," and is presently codified as Title 18 USC § 3288. The purpose underlying the promulgation of this statute as interpreted by the Federal courts was "not to extend the period of limitation against persons not indicted, but to prevent the escape of those who have been seasonably indicted, but whose indictment was bad because of some corrigible mistake." United States v Strewl, 99 F 2d 474 (CA 2d Cir) (1938). See also United States v Main, 28 F Supp 550 (DC SD Tex) (1939). Prior to Congressional enactment of this statute in 1934 (originally codified as Title 18 USC § 587), an accused in the Federal courts could escape prosecution where an indictment though seasonably found would not support a conviction and the fault was discovered too late to indict him again. It was to ameliorate this reprehensible situation that Congress enacted the "Reindictment" statute. Of course this statute—regardless of how desirable it may be—is wholly inapplicable in courts-martial practice. We must next determine whether there exists similar statutory authority in the Code or procedural authority in the Manual to permit such corrective "indictment" in the military.

Turning first to the Code, we find no authorization—nor has any been cited to our attention—which ■ would permit such a practice. Referring next to the Manual for Courts-Martial, supra, we find several provisions which bear close scrutiny. Paragraph 32c of the Manual, provides that:

". . . When the preliminary inquiry shows that additional or different offenses have been committed (24b), the immediate commander may prefer appropriate new charges for those offenses which he believes cannot properly be disposed of under Article 15. In such a case, he should consolidate all charges against the accused into one set of charges."

The board of review in the Detion case, supra, cited this Manual provision as

authority for the proposition that the "redrafting [of] charges preferred within the prescribed period, was in essence neither unauthorized nor unprecedented." However, we view the above-quoted Manual provision in a different light. Paragraph 32 deals generally with the action to be taken by the commander exercising immediate jurisdiction under Article 15 over an accused member of his command. Subsection c of this paragraph is entitled "Preferring charges" and simply authorizes the preferral of appropriate charges for those offenses which cannot properly be disposed of under Article 15. After preliminary inquiry has been conducted "the immediate commander may prefer appropriate new charges." These new charges are specifically referred to in paragraph 24b, Manual for Courts-Martial, supra, as "additional charges" which may relate to "transactions not known at the time or to offenses committed after the original charges were preferred." In the instant case the offenses listed in both charge sheets are the same. The situation presented here was clearly not contemplated by the framers of the Manual in paragraphs 32c or 24b.

Further reference to the Manual discloses paragraph 33d which provides for the redraft of charges over the accuser's signature in order to correct obvious error, provided that:

". . . the redraft does not include any person, offense, or matter not fairly included in the charges as preferred. Corrections and redrafts should be initialed by the officer making them. If a change involves the inclusion of any person, offense, or matter not fairly included in the charges as preferred, new charges, consolidating all offenses which are to be charged, should be signed and sworn to by an accuser."

We had occasion to interpret this Manual provision in the case of United States v Brown, 4 USCMA 683, 16 CMR 257. There the original charge alleged a violation of Article 134, Uniform Code of Military Justice, 50 USC § 728, occurring on June 13, 1951. This charge was verified on November 7, 1952, and

forwarded on January 22, 1953, to the convening authority who referred it for trial on February 7, 1953. In connection with another case, a further investigation of charges against the accused was ordered and thereafter on March 18, 1953, the convening authority directed that the charge sheet be amended to allege the date of the offense to "on or about 1 March 1951" and to charge a violation of the Articles for the Government of the Navy rather than the Uniform Code of Military Justice. Following this amendment, defense counsel entered a plea of the statute of limitations on the theory that a different offense was now alleged, which was barred by the statute since the amended charge necessarily was received by the officer exercising summary court-martial jurisdiction after March 18, 1953. The plea was overruled. We held that the amendment of the specification as to the date of the offense was permissible under paragraph 33d, Manual for Courts-Martial, supra, inasmuch as the altered specification included no person, offense, or matter not fairly included in the original charge. Moreover, the amended specification did not allege the offense to have been committed at a date which would have been barred by the statute of limitations. The instant case, however, is clearly distinguishable from Brown, supra, since here we have an entirely new charge sheet with a different convening authority and accuser rather than merely an amendment to the original charge sheet. Only the charge sheet bearing the date of July 3, 1956, was before the court-martial, and that on its face showed the statute of limitations had run against the two specifications of Charge III. Accordingly, we conclude that authority exists neither in the Code nor the Manual to permit the action taken in the instant case.

It would have been perfectly proper to have brought the accused to trial on the original charge sheet which was seasonably filed with the officer exercising summary court-martial jurisdiction. All that would have been necessary was an amendment to specification 2 of

Charge II fixing the termination date of the alleged desertion. The practice of filing charges prior to the statute of limitations running its course is commendable and is to be encouraged. Paragraph 33b, Manual for Courts-Martial, supra. We inferentially approved this practice in our early decision of United States v Nichols, 2 USCMA 27, 6 CMR 27. However, if such charges are later redrafted in a new charge sheet—as distinguished from amended—the risk of running the statute of limitations is present. Modern judicial theory looks with favor upon statutes of limitations and they are liberally construed on behalf of an accused in furtherance of their manifest objectives. We conclude, therefore, that the statute of limitations had run as to the specifications of Charge III and that the law officer erred in failing to advise the accused of his right to interpose that defense. In view of the fact that the Government has not been given the opportunity to show—if possible—whether the statute may have been tolled under the provisions of Article 43 (d), Uniform Code of Military Justice, supra, we return the case to The Judge Advocate General of the Navy for reference to a board of review. In its discretion, the board may order a rehearing as to Charge III, or it may dismiss that charge and reassess the sentence on the basis of the remaining approved findings of guilt.

QUINN, Chief Judge (concurring):

Besides the reasons set out in the principal opinion for the inapplicability of 18 USC § 3288 to military law, in my opinion, there is another which is fundamental. Until the charge sheet is actually referred to trial, it cannot be compared to an indictment in the civilian community. Very recently, we held that, when justified by the preliminary evidence, the convening authority can change the offense alleged from larceny to robbery. United States v Smith, 8 USCMA 178, 23 CMR 402. A change of such a substantial nature cannot be made in the Federal criminal courts without reindictment by the Grand Jury. See Heald v United States, 177 F 2d 781 (CA 10th Cir) (1949);

Carney v United States, 163 F 2d 784 (CA 9th Cir) (1947), cert den 332 US 824, 92 L ed 400, 68 S Ct 165. The Smith case clearly stands for the principle that the charge sheet referred for trial is the only charge sheet upon which the trial can proceed. See Article 34, Uniform Code of Military Justice, 10 USC § 834. The charge sheet before the court in this case shows that the statute of limitations had run. The law officer, therefore, should have brought the applicability of the statute to the attention of the accused.

LATIMER, Judge (dissenting):

I dissent.

The decision in this case is a classic example of elevating form over substance. The findings on two perfectly good specifications are set aside merely because the pleader, when faced with the necessity of amending another specification, elected to make the addition by preparing a new charge sheet instead of making interlineations on the first.

On November 8, 1954, a charge sheet was prepared against the accused, in which he was charged with five offenses pleaded under separate specifications. These alleged the following crimes: Absence without leave from December 3, 1952, until December 8, 1952; desertion arising out of an absence without authority from December 13, 1952, until January 23, 1953; desertion for a period commencing on or about January 26, 1953; failure to obey a lawful order on December 13, 1952; and a failure to obey another order on January 26, 1953. All charges and specifications were alleged under the appropriate punitive Articles of the Code.

It should be noted from my recitation of offenses alleged that the second charge of desertion pleaded the commencement date but was silent as to the date of termination. The reason for that omission was that at the time the specifications were drafted and sworn to, the accused was absent in desertion, and obviously the date of his return could not have been alleged. It is conceded by all that the charge sheet was

filed with an officer exercising summary court-martial jurisdiction in ample time to toll the statute of limitations on all offenses.

On June 2, 1956, some three and one-half years after his original absence, the accused was apprehended and returned to military control. In order to complete the charge sheet and allege all the necessary facts, the pleader found it necessary to amend the second specification on desertion to show the date the accused was returned to military control. There are two methods by which this could be accomplished. The first would be by interlineations and the second by executing a new charge sheet. Here the second method was chosen, and the time of return is the only addition to any specification. In any event, the first charge sheet initiates the proceeding and regardless of the manner in which the amendment is made the original charge and the amended charge are part of the record of the proceedings below. Therefore, the sole question posed by this appeal is whether recharging the same offense on a new charge sheet opens the way for an accused to defend successfully on a statute of limitations, the running of which has been tolled.

Article 43 (c) of the Uniform Code of Military Justice, 10 USC § 843, provides:

"Except as otherwise provided in this article, a person charged with any offense is not liable to be tried by court-martial or punished under section 815 of this title (article 15) if the offense was committed more than two years before the receipt of sworn charges and specifications by an officer exercising summary court-martial jurisdiction over the command or before the imposition of punishment under section 815 of this title (article 15)."

That Article is amplified by paragraph 68c of the Manual for Courts-Martial, United States, 1951, which provides:

"The period of limitation begins to run on the date of the commission of the offense. With respect to liability to trial by court-martial, it ends when sworn charges and specifications are received by any officer exercising summary court-martial jurisdiction over the command which includes the accused."

It matters not which of the above-quoted provisions are relied on, for they are substantially the same. Under the codal provision, the accused is liable to be tried for his offenses because sworn charges were filed within the time. Under the Manual rule, the statute started running when the offenses were committed and ended when the charges were filed. Under both provisions, the Government's right to prosecute has been preserved. Now, applying the rule to the facts of this case, the offenses were committed on December 13, 1952, and January 26, 1953, respectively. The statute of limitations, therefore, commenced running on those two dates. The charge sheet was received by the summary court officer on November 10, 1954, and on that date the statute ceased to run. So far as I can ascertain, nothing has happened which would cause the statute to again start running. At the time the first charge sheet was filed—and it is still in the record—the statute was tolled. Thus, if the second charge sheet is considered as being foreign to the first, the latter still effectively protects the right to proceed. Therefore, I am unable to find any good reason why the prosecution of the offense is barred.

Stated in somewhat different language, it appears to me that the substance of the issue which concerns us is not upon which piece of paper the specification is written, but rather whether the nature of the offense has been changed so that the Government is prosecuting a crime which has been outlawed. In the case at bar, no one contends that a new offense has been alleged, and well they could not, for there has not been a change in any word in either of the two specifications, except to change the unit to which accused was assigned. The place, nature, and date of the offenses and all facts alleged in each specification are identical. Therefore, to say that, merely because two specifications are realleged in

232

substantially the same language on a new charge sheet and sworn to before a different officer, the legal effect of the filing of the first charge sheet is destroyed, does not make sense to me. Either the filing of the original charges with the officer exercising summary court-martial jurisdiction tolled the statute on the particular offenses pleaded, or it did not. The Code states that it does, and I am content to say that, so long as a new offense is not pleaded, the Government is free to substitute one charge sheet for another.

One other argument found in the Court's opinion bears answering. Of course, the accused is tried on the second charge sheet, but what has that to do with the tolling of the statute of limitations? On its face, the second charge sheet shows the offenses were committed over two years before the accused was tried. As previously indicated, the original charge sheet instituted this proceeding, and it is not stricken from the record because of an amended pleading. Moreover, it was specifically considered by the investigating officer who used it to support his recommendation for trial. Therefore, on the face of the entire record, the statute is shown to have been tolled. By analogy, I might turn to absence from the United States. Specifications might be set out in language on a charge sheet which would indicate the offenses were outlawed. But if the record otherwise establishes an absence which would toll the statute, the Government could prosecute. In this case, the Government prosecuted on the second charge sheet, but the first furnished the evidence which tolled the statute.

For the foregoing reasons I would affirm the board of review.