UNITED STATES, Appellee,

v.

Robert A. TUNNELL, Jr., Quartermaster
Seaman Apprentice U.S.
Navy, Appellant.

No. 51,643.
NMCM 84–3513.

U.S. Court of Military Appeals.

Dec. 1, 1986.

For Appellant: *Lieutenant Commander
Robert J. Smith*, JAGC, USN (argued);
*Lieutenant Commander James Quigley*,
JAGC, USN (on brief); *Major Patrick H.*

*McCann, Jr.,* USMC and *Lieutenant Thomas H. Dinkelacker,* JAGC, USNR.

For Appellee: *Major J.S. Uberman,* USMC (argued); *Captain Carl H. Horst,* JAGC, USN (on brief); *Captain W.J. Hughes,* JAGC, USN.

*Opinion of the Court*

EVERETT, Chief Judge:

Arraigned on a charge of desertion from October 16, 1979, until January 13, 1984, appellant was found guilty by a special court-martial, in accordance with his pleas, of the lesser-included offense of unauthorized absence, in violation of Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886. His approved sentence includes a bad-conduct discharge, confinement for 75 days, forfeiture of $200.00 pay per month for 2 months, and reduction to E–1. This Court granted review of the following issue:

> WHETHER THE UNITED STATES NAVY–MARINE CORPS COURT OF MILITARY REVIEW ERRED BY RULING THAT THE DATE OF RECEIPT OF SWORN CHARGES BY AN OFFICER EXERCISING SUMMARY COURT–MARTIAL JURISDICTION IS NOT INCLUDED IN THE TWO–YEAR PERIOD UNDER ARTICLE 43(c), UNIFORM CODE OF MILITARY JUSTICE, 10 U.S.C. § 843(c).

I

A

■ Although appellant was charged with desertion, for which the statute of limitation is 3 years, Art. 43(b), he was found guilty, pursuant to his pleas, of the lesser offense of unauthorized absence, which is subject to a 2-year statute, Art. 43(c). Thus, the shorter statute governs. *United States v. Busbin,* 7 U.S.C.M.A. 661, 23 C.M.R. 125 (1957); *United States v. Shell,* 7 U.S.C.M.A. 646, 23 C.M.R. 110 (1957). Tunnell's pleas did not constitute a waiver of any bar to prosecution provided by the statute of limitations. For there to be such a waiver, the record must disclose

that—by reason of advice from the military judge or otherwise—the accused was aware of his right to assert the statute of limitations and nonetheless chose to plead guilty. *United States v. Jackson,* 20 M.J. 83 (C.M.A.1985); *United States v. Arsneault,* 6 M.J. 182 (C.M.A.1979). Nothing in the record adequately demonstrates such an awareness.

B

■ Article 43(c) of the Code provides: Except as otherwise provided in this article, a person charged with any offense is not liable to be tried by court-martial or punished under section 815 of this title (article 15) if the offense was committed more than two years before the receipt of sworn charges and specifications by an officer exercising summary court-martial jurisdiction over the command or before the imposition of punishment under section 815 of this title (article 15).

The military offenses of desertion and unauthorized absence are not continuing offenses. They are committed when the servicemember deserts or absents himself. Para. 215*d,* Manual for Courts-Martial, United States, 1969 (Revised edition); *United States v. Salter,* 20 M.J. 116 (C.M.A. 1985); *United States v. Jackson, supra; United States v. Rodgers,* 8 U.S.C. M.A. 226, 24 C.M.R. 36 (1957). October 16, 1979, was the date when Tunnell's absence began. Thus, it also was the date when "the offense was committed" for purposes of Article 43(c).

The Court of Military Review considered that, under the language of Article 43(c), the statute of limitations began to run on the day of the offense. Thus, October 16, 1979, should be included in computing whether "more than two years" had passed "before the receipt of sworn charges ... by an officer exercising summary court-martial jurisdiction." However, the court below reasoned that the date of receipt of the charges—October 16, 1981—should be excluded from the computation. Thus, the time to be measured extended from October 16, 1979, through October 15, 1981.

*See United States v. Tunnell,* 19 M.J. 819 (N.M.C.M.R.1984).

The Court of Military Review also decided that, in applying the statute of limitations, fractions of a day should be disregarded. Thus, it was irrelevant at what time of day appellant's absence began on October 16, 1979, or at what time of day the sworn charges were received on October 16, 1981. The word "year" in Article 43(c) was interpreted to mean a "calendar year" totaling 365 days in normal years and 366 in a leap year. On these assumptions, the period extending from October 16, 1979, through October 15, 1981, was not "more than two years"; so the statute of limitations did not bar the prosecution.

 We also are of the view that fractions of a day should be disregarded in applying Article 43(c). "Fractions of a day are not generally considered in the legal computation of time, the day on which an act is done or an event occurs being wholly included or excluded." *See* 74 Am Jur 2d, *Time* § 13 (footnote omitted). *Accord* 86 C.J.S. *Time* § 16. Likewise, we agree that in Article 43(c), the term "year" refers to an ordinary calendar year of 365 days— or, in a leap year, 366 days. *Accord United States v. Reed,* 19 M.J. 702 (N.M.C.M.R. 1984), *pet. denied,* 20 M.J. 322 (1985). The real issue is how to treat the date of the offense and the date of receipt of the charges for statute-of-limitations purposes.

Appellant insists that both dates—namely, October 16, 1979, and October 16, 1981 —should be included in calculating whether "more than two years" had elapsed. On this premise the sworn charges were received one day too late. Another panel of the same Court of Military Review has used a method of computation which differs from that suggested by appellant, as well as from that applied by the court below in the case at bar. It held that the day of the event is to be excluded, while the last day of the period is to be included. *United States v. Reed, supra. See also United States v. Guerro,* 694 F.2d 898 (2d Cir.1982), *cert. denied,* 459 U.S. 1222, 103

S.Ct. 1230, 75 L.Ed.2d 463 (1983); *Fogel v. Commissioner,* 203 F.2d 347 (5th Cir.1953).

This latter method of computation is specifically prescribed by the Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure. The former states:

> In computing any period of time prescribed or allowed by these rules, ... by order of court, or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, a Sunday, or a legal holiday.

Fed.R.Civ.P. 6(a). According to the latter rule:

> In computing any period of time the day of the act or event from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included ...

Fed.R.Crim.P. 45(a).

18 U.S.C. § 3282, which prescribes the time in which most non-capital Federal prosecutions must be initiated, also looks to the time that has passed after commission of the offense; but it does not specify whether the date of filing charges is to be included. According to its terms:

> [N]o person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.

Obviously, Article 43(c) of the Uniform Code takes a different approach from that prescribed by the Federal Rules and by 18 U.S.C. § 3282. Instead of looking forward from the time the offense is committed, Article 43 looks backward from the time when sworn charges were received. In his opinion for the court below, Judge Barr concluded that Congress intended to prescribe for courts-martial a method of com-

putation different from that used in other federal courts. He reasoned: [1]

It is clear that Congress, in drafting Article 43, did not intend to create, in sections (b) and (c), a mirror image of the rule then and now extant in federal law. Article 43(f) was specifically borrowed from, and incorporated as part of the UCMJ, 18 USC § 3287. If Congress had intended to incorporate the rule of 18 USC § 3282, it certainly would have both indicated such intention as explicitly as it did with respect to Article 43(f) and chosen the wording of 18 USC § 3282, rather than that found in Article 43(b) and (c). *See* Index and Legislative History, Uniform Code of Military Justice, HH at 1044.

If Judge Barr was correct in his premise—and we believe he was—then it is hard to justify the use of the method of computation employed in *United States v. Reed, supra.* What, then, did Congress intend in rejecting the method of computation used in the Federal District Courts?

## C

█ Apparently the language of Article 43(c) is derived from Article of War (A.W.) 39, Article 5(b) of the proposed Articles for the Government of the Navy (A.G.N.), and 18 U.S.C. § 3287. *See* Uniform Code of Military Justice, Hearings on H.R. 2498 Before a Subcomm. of the House Armed Services Comm., 81st Cong., 1st Sess. (hereafter House Hearings) 1032 (1949).

A.W. 39 provided:

Except for desertion or absence without leave committed in time of war, or for mutiny or murder, no person subject to military law shall be liable to be tried or punished by a court-martial for any crime or offense committed more than two years *before* arraignment of such person ...

(Emphasis added.)

Article 5(b) of the proposed A.G.N. provided:

(b) Except for desertion in time of war or absence from place of duty without authority in time of war, or for mutiny or murder, no person subject to these Articles shall be tried or punished by a court martial for any offense committed more than two years *before* the signing of charges and specifications to be preferred against him [this amounts to referral—see House Hearings at 1035]: *Provided,* That nothing in this section of this Article shall extend to any person fleeing from justice or in the custody of civil authorities ...

S. 1338, 80th Cong., 1st Sess. (1947) (emphasis added). Section 3287 of Title 18, which is still in effect, deals with suspension of limitations on offenses involving frauds, contracts, or government property during wartime.

In dealing with the statute of limitations, paragraph 67 of the Manual for Courts-Martial, U. S. Army, 1949, stated that "[t]he period of limitations begins to run on the date of the commission of the offense." However, the Manual did not specify whether the date of arraignment was to be included in determining whether more than two years had passed. Naval Courts and Boards (1937) does not state generally whether the date of an offense is to be included for purposes of computing the time that has elapsed, *see* sec. 407; but, in connection with desertion in time of war, it explains that the statute "commences to run ... from the date on which the offender first absents himself without leave." Sec. 332. This directive apparently contained no express guidance as to the treatment of the date of the issuing of the order for trial.

When Congress was considering Article 43 of the Code, it obviously was concerned with problems that might arise under Article of War 39. An accused could not be arraigned in absentia, so trial might be barred by the statute of limitations simply because he could not be located and arraigned. Subsections (b) and (c) of Article 43 were intended to remedy this problem

---

1. *See United States v. Tunnell,* 19 M.J. 819, 822 n. 1.

by providing that the statute could be tolled by transmission of sworn charges to the officer exercising summary court-martial jurisdiction—regardless of whether the accused was under military control at that time.

This date, rather than that of preferring charges, was used, because of concern that preferring charges or delivery of charges to a "commanding officer" might be an "open invitation to fraud." It was feared that the commanding officer could backdate the receipt of charges or keep "the charges in his desk for 10 years." House Hearings at 821 (Mr. L'Heureux). To eliminate the possibility of backdating or of holding the charges for an extended period of time, it was agreed that termination of the statutory period should depend on when the charges were received by the summary court-martial officer. House Hearings at 1035–36 (Mr. Larkin). *See also* House Hearings at 1031–1046.

D

Our attention has not been directed to any portion of the legislative history of Article 43 which deals specifically with whether the date of the offense, the date of receipt of sworn charges, or both were to be included in computing whether more than two years had passed. However, since Congress chose to provide that time should be measured backwards from the date of receipt of sworn charges—rather than forward from the date of the offense—probably it also intended for the date of the offense to be included in the computation of the elapsed time. This would conform to prior military practice under statutes which also measured the running of the period of limitations back from an event subsequent to commission of the offense. However, there still remains the question of how to treat the date of receipt of the sworn charges.

E

Manual for Courts-Martial, United States, 1951, provided in paragraph 68c:

The period of limitation begins to run on the date of the commission of the offense. With respect to liability to trial by court-martial, it ends *when* sworn charges and specifications are received by any officer exercising summary court-martial jurisdiction over the command which includes the accused. See 33b and Article 24. The termination of the period of limitation may be proved, prima facie, by the signed receipt for the charges and specifications prescribed in 33b.

(Emphasis added.)

Paragraph 33b of that Manual stated:

Date of receipt.—Immediately upon the receipt of sworn charges against a member of his command, the officer exercising summary court-martial jurisdiction will cause the hour and date of receipt to be entered in the space provided on page 3 of the charge sheet (app. 5). *This date is important as it fixes the end of the period of time which is to be considered in determining whether the prosecution of the accused is barred by the statute of limitations.* See Article 43b and c.

(Emphasis added.)

Although the language of these two paragraphs might be construed to mean that the date of receipt of charges should be included, this meaning is far from crystal clear. The word "when" in paragraph 68c is consistent with tolling the statute either on the date of receipt or on the day before. Likewise, the reference to "the end of the period of time" in paragraph 33b is consistent with termination of the period on the date of receipt of charges or on the day before.

The 1969 revision to the Manual for Courts-Martial did not contain any substantive changes relating to the computation of time that had been contained in the Manual (1951). Paragraph 68c of the Manual (1969) does not set forth the beginning and ending dates of the statutory period with the degree of specificity reflected in the comparable paragraph of the Manual (1951). The reason for this omission, however, was that the substance of what had

been found in the 1951 version of paragraph 68*c* was transposed to paragraph 215 *d,* Chapter XXIX (Matters of Defense), of the Manual (1969). *See* Para. 68*c,* D.A. Pam. 27–2, *Analysis of Contents, Manual for Courts-Martial, United States, 1969 (Revised edition).* Paragraph 33*b* of the Manual (1969) remained unchanged from the earlier version.

In *United States v. Busbin, supra,* the accused's absence had begun after the signing of the Armistice between the opposing forces in Korea. Consequently, the inception of his absence was in peacetime and the 2–year statute of limitations governed. In holding that the statute barred prosecution, we made the following comments about the period of time to be included in calculating the statutory period:

> We are not unmindful of the fact that accused was in the custody of civilian authorities between January 4, 1956, and January 27, 1956, which interval must be excluded in computing the period of limitation under the provisions of Article 43(d) of the Code, supra. However, the date of receipt of sworn charges—February 13, 1956, in this case—stops the running of the statute, not the date of return to military control. Thus, even excluding the twenty-four day period, more than two years *intervened between* the inception of accused's absence on January 8, 1954, and the receipt of sworn charges against him by an officer exercising summary court-martial jurisdiction. Accordingly, the statute of limitations had run against the offense of absense without leave.

7 U.S.C.M.A. at 663, 23 C.M.R. at 127 (emphasis added).

The reference here to 2 years intervening "between" the commencement of the absence "and the receipt of sworn charges" might suggest that both of these dates should be included in determining the time or that both dates should be excluded. Thus, if the date of inception is to be included, then it would follow that the date of receipt of the charges would also be included. However, when we consider in context the Court's language in *Busbin,* we doubt that the Court really had in mind inclusion of the date of receipt of sworn charges. Furthermore, when the word "between" appears, usually both the first and last terminal dates are excluded. *See* 74 Am Jur 2d, *Time,* § 26; 98 ALR 2d 1331, 1369 (1964). "As a general rule the use of the word 'between' in designating a period of time, bounded by two specified days or dates, excludes both terminal days." 86 C.J.S. *Time* § 13(6).

In *United States v. Salter, supra,* we remarked:

> The charge sheet (DD FORM 458) which was referred to trial states that the sworn charges were received by the officer exercising summary court-martial jurisdiction at 1400 hours on March 1, 1983. Because the offense of absence without leave is not a continuing offense and is complete when the accused initially departed from his unit of assignment, *United States v. Francis,* 15 M.J. 424 (C.M.A. 1983); *see United States v. Jackson,* 20 M.J. 83 (C.M.A. 1985); *United States v. Rodgers,* 8 U.S.C.M.A. 226, 24 C.M.R. 36 (1957), more than 2 years had elapsed between the date that the offense was committed (September 1, 1979) and the date that the sworn charges were received (March 1, 1983). Consequently, the accused was entitled to plead the military statute of limitations in bar of trial. *See* Article 43(c), UCMJ, 10 U.S.C. § 843(c); para. 215*d,* Manual for Courts-Martial, United States, 1969 (Revised edition).

20 M.J. at 116–17 (emphasis added). This language is subject to the same observations just made about comparable language in *Busbin.*

From our review of the legislative history, Manual provisions, and our own precedents, we have discovered nothing which provides clear guidance as to whether the date of receipt of the sworn charges by the officer exercising summary court-martial jurisdiction should be included in determining whether the statute of limitations has

run. During oral argument, reference was made to another provision of the Code which concerns the time within which certain action must be taken. However, that provision—Article 35, UCMJ, 10 U.S.C. § 835—is of little aid because it provides for a computation of the time that has passed *after* an event has occurred. Moreover, it has a different purpose from that of Article 43, in that it is intended to delay action that is too speedy rather than speed action that is too slow.

## F

Turning elsewhere for guidance, we are informed as follows:

> As a general rule, where an act is required to be done a specified number of days "before" an event, the required number of days is to be computed by excluding the day on which the event is done and including the day on which the event is to occur.

*See* 74 Am Jur 2d, *Time,* § 24 (footnote omitted). Consistent with this "general rule," the Supreme Court of Arizona excluded the date of filing of a document when the State Rules of Civil Procedure required that such documents be filed 20 or more days before the date set for trial. *See Equitable General Insurance Company v. Helm,* 128 Ariz. 6, 623 P.2d 365, 366 (1981). As the Court explained:

> The language in Rule 6(a) quoted above anticipates time periods which follow a certain event. Rule 42(f)(1)(C), to the contrary, refers to a time period which precedes an event. Application of Rule 6(a) to Rule 42(f)(1)(C) requires the simple adaptation of counting days backward instead of forward from the precipitating event. The date set for trial is "the day * * * from which the designated period of time begins to run," and is not included in computing the twenty-day period. Counting backward from the trial date, the last day of the twenty-day period, here November 26, is included.

The situation contemplated by the "general rule" is not the same as that involved in the present case. Here, although the statute of limitations is stated in retrospective terms, the action to be taken—delivery of the sworn charges to the officer exercising summary court-martial jurisdiction—always occurs after the base point event, rather than before. Nonetheless, there is some basis for viewing this "rule" of interpretation as a basis for holding that the date of receiving the charges should be excluded from the computation.

We note that, if there had been employed here the method of computation used in determining whether prosecution in a Federal District Court is barred by the statute of limitations, the Government would have been free to proceed. October 16, 1981, would have been included; but October 16, 1979—the date of the offense—would have been excluded. There is no reason to believe from the legislative history of Article 43 that Congress intended to prescribe a method of computation that would be especially favorable to an accused or produce a result more lenient than would be reached under the method of computation applicable in Federal trials generally.[2]

Moreover, we presume that Congress is well aware that "at the present time, both in the construction of contracts and statutes as well as in matters of practice, when time is to be computed from a particular day or when an act is to be performed within a specified period from or after a day named, the rule is to exclude the first day and to include the last day of the specified period, except when a certain number of entire days are required to intervene, in which case both the first and last days are excluded." 74 Am Jur 2d, *Time,* § 15 (footnotes omitted). *Accord* 86 C.J.S. *Time* § 13(1). In light of this "rule," if—as we hold—Congress intended to include the date of the offense in computing the statutory period, we doubt that it intended for the date of receipt of the sworn charges also to be included.

---

**2.** "At common law, there was no limitation of time for prosecuting a" crime. "Statutes of limitation in criminal cases are considered acts of

grace, or a surrendering by the sovereign of its right to prosecute." 21 Am Jur 2d, Criminal Law, § 223 (footnotes omitted).

Admittedly, the indications of congressional intent are scanty. However, we believe that Congress had in mind that, just as the initial date is excluded when measurement is prospective, the final date should be excluded when the measurement is retrospective.

## II

■ The date of October 16, 1981, must be excluded in determining whether the offense of which appellant was convicted occurred "more than two years before the receipt of sworn charges and specifications by an officer exercising summary court-martial jurisdiction." Thus, the statute of limitations had not run.

The decision of the United States Navy-Marine Corps Court of Military Review is affirmed.

Judges COX and SULLIVAN concur.