UNITED STATES

v.

**Danny H. MOORE, 493 58 2810, Gunnery Sergeant (E–7), U.S. Marine Corps.**

**NMCM 89 1422.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 20 Sept. 1988.

Decided 16 April 1990.

---

Before BYRNE, FREYER and STRICKLAND, JJ.

STRICKLAND, Judge:

Appellant was charged with eight specifications of rape, four specifications of carnal knowledge and one specification of indecent assault in violation of Articles 120 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920 and 934, respectively. These offenses were alleged to have occurred over a period of time beginning in May 1983 and continuing through September 1985. Receipt of the sworn charges, by an officer exercising summary court-martial jurisdiction, occurred on 20 May 1988. At the time these offenses were alleged to have happened, the statute of limitations for rape and carnal knowledge was 3 years and for indecent assault was 2 years.[1]

Despite a recommendation by the Article 32 Investigating Officer that all but two of the specifications be dismissed due to the expiration of the statute of limitations, the staff judge advocate recommended, and the convening authority agreed, that all charges and specifications be referred to a general court-martial. Subsequently, at trial, appellant moved to dismiss all charges and specifications except Specifications 7 and 8 of Charge I as barred by the statute of limitations. The Government concurred and the motion was granted. Consequently, appellant was tried only on two specifications of rape.[2]

Contrary to his pleas, appellant was convicted of both specifications[3] and was sentenced by the military judge, sitting alone, to a dishonorable discharge, confinement

LT MARY ANNE RAZIM, JAGC, USNR, Appellate Defense Counsel.

LT J. RICHARD CHEMA, JAGC, USN, Appellate Government Counsel.

WILLIAM J. HOLMES, Esquire, Civilian Defense Counsel.

1. The statute of limitations for Article 120 was changed to 5 years, effective 14 November 1986. Military Justice Amendments of 1986, Pub.L. 99–661, Title VIII.

2. Charge I, Specification 7: In that Gunnery Sergeant Danny H. Moore ... did, at Marine Corps Air Station, New River, Jacksonville, North Carolina, on or about or between May and June 1985 on several occasions, rape Leslynn [D].
Charge I, Specification 8: In that Gunnery Sergeant Danny H. Moore ... did, at Marine Corps Air Station, New River, Jacksonville, North Carolina, and in Jacksonville, North Carolina, on or about or between August and September 1985 on several occasions, rape Leslynn [D].

3. As to Specification 7 of Charge I, the military judge excepted the words "on several occasions" thus finding appellant guilty of a single rape on or about or between May and June 1985. As to Specification 8 of Charge I, the military judge found appellant guilty by exceptions and substitutions of a single rape occurring at the White Oak area at or near Jacksonville, North Carolina on or about or between August and September 1985.

for 20 years, forfeiture of $500.00 pay per month for 4 years and reduction to pay grade E–1. The convening authority mitigated the dishonorable discharge to a bad-conduct discharge and approved the remainder of the sentence but suspended all confinement in excess of 5 years for the period of confinement served plus 12 months thereafter.

This case is before us with three assignments of error.[4] We have considered the briefs of counsel and heard oral argument. We find, as a matter of law, that the evidence of record is insufficient to sustain appellant's conviction of either Specification 7 or 8 of Charge I and we reverse.

Specification 7 of Charge I alleges that appellant raped his step-daughter on several occasions on or about or between May and June 1985. Because the statute of limitations for rape was tolled by receipt of sworn charges on 20 May 1988, a prosecution for any rape occurring before 20 May 1985 would ostensibly be barred. The military judge found appellant guilty of a single rape during the time period in question. This presents two issues for resolution. First, did appellant waive his right to assert a running of the statute of limitations by not including this specification in his motion to dismiss prior to the final adjournment of the court-martial, *see* Rule for Courts–Martial (R.C.M.) 907(b)(2)(B), and, second, is there competent evidence of record which proves beyond a reasonable doubt that the single rape of which he was convicted occurred on or after 20 May 1985.

■ Rule for Courts–Martial (R.C.M.) 907(b)(2)(B) provides that the statute of limitations is a waivable ground for dismissal "provided that, if it appears that the accused is unaware of the right to assert the statute of limitations in bar of trial, the military judge shall inform the accused of this right." The duty imposed on the military judge to inform an unaware accused of the right to assert the statute of limitations is derived from paragraph 68c, Manual for Courts–Martial, United States, 1969 (Rev.); *United States v. Troxell*, 12 U.S.C.M.A. 6, 30 C.M.R. 6 (1960); and, *United States v. Rogers*, 8 U.S.C.M.A. 226, 24 C.M.R. 36 (1957). *See Analysis*, Manual for Courts–Martial (MCM), United States, 1984, A21–50. The Government asserts that there has been a waiver in this instance, arguing that appellant was obviously aware of his right to raise the statute of limitations with respect to the specification in question since he was successful in having eleven other specifications dismissed on this ground. At first glance, this appears to be a persuasive argument, but a close analysis of case law leads us to a different conclusion.

In *United States v. Salter*, 20 M.J. 116 (C.M.A.1985), the Court of Military Appeals, *citing Rogers*, recognized the long established precedent in military law that an accused be advised in open court whenever it appears that the statute of limitations has run against an offense and that waiver will not be imposed where the record does not disclose that the accused was aware of that right. *Salter*, at 117. In *Salter*, the mere fact that the charge sheet referred to trial indicated on its face that the sworn charges were received subsequent to a running of the statute of limitations for unauthorized absence was sufficient to require that the accused be advised of his right to plead the statute of limitations in bar of trial. The accused was not so advised and, consequently, there was no knowing waiver and the issue was preserved on appeal. This Court's decisions have been in accord. *See United States v. Shinault*, 28 M.J. 666 (NMCMR 1989) (no knowing waiver where the charge sheet indicated receipt by the summary court-martial convening authority over 4

---

4. I. THE EVIDENCE OF RECORD IS NOT SUFFICIENT TO ESTABLISH APPELLANT'S GUILT TO THE CHARGED OFFENSES BEYOND A REASONABLE DOUBT EITHER FACTUALLY OR AS A MATTER OF LAW. II. THE FINDINGS OF GUILTY CANNOT BE AFFIRMED BECAUSE THE MILITARY JUDGE EFFECTIVELY FOUND THAT THE EVIDENCE OF RECORD DID NOT PROVE APPELLANT GUILTY BEYOND A REASON- ABLE DOUBT AND IMPEACHED HIS FINDINGS. III. THE MILITARY JUDGE ERRED AS A MATTER OF LAW IN CONCLUDING THAT THE TESTIMONY OF MICHELLE BARNETT CONSTITUTED A PRIOR CONSISTENT STATEMENT BECAUSE THE STATEMENT WAS NOT MADE PRIOR TO THE TIME AT WHICH THE MOTIVE TO FABRICATE AROSE.

years after the rape occurred where the statute of limitations for rape was 3 years); *United States v. Centeno*, 17 M.J. 642 (NMCMR 1983) (when it is evident from either "mere reference to the 'receipt' block in the charge sheet or as a result of evidence admitted" at trial, the military judge has a *sua sponte* duty to advise the accused of his right to assert the statute of limitations).

■ In the present case, it is clear from the face of the charge sheet that the portion of Specification 7 alleging rapes occurring prior to 20 May 1985, was subject to dismissal by asserting the statute of limitations. It is unclear whether appellant was mistaken as to the applicability of Article 43, UCMJ, 10 U.S.C. § 843, to this specification or whether he was unaware of its applicability at all. We will not presume that appellant was aware of the applicability of Article 43 to this specification merely because he asserted it as to other specifications contained in the charge sheet. In any event, the military judge had a *sua sponte* duty to advise appellant of the applicability of Article 43 to Specification 7 and he failed to make such advisement. Under these circumstances, we find that appellant did not knowingly waive the statute of limitations with respect to the applicable portion of Specification 7 of Charge I.

■ We must now resolve whether there was competent evidence of record which proves beyond a reasonable doubt that the single act of rape of which appellant was convicted occurred on or after 20 May 1985. The only evidence presented at trial with respect to the rapes charged under Specification 7 is contained in the following excerpt:

Q. [T.C.] Now, I'd like to ask you about the acts that are charged in the specifications on this charge sheet and one of those are [sic] between May and June of 1985. Do you remember the incidents in May and June of 1985 where he performed sexual intercourse on you?

A. Yes.

Q. And if you could, where were you living at that time?

A. May and June of '85 we lived still aboard the Air Station in base housing. That was the end of my junior year and I—things were pretty bad with my father.

Q. Now, do you remember—

MJ: I'm sorry, I didn't hear the last part.

WIT: Things were pretty bad with my father those months.

Q. Now, Leslynn, again since this is charged I am going to ask you to tell Colonel Sims exactly what he did to you during those months when he would come to your room at night?

A. The same things that would happen before would take place then. This was the end of my junior year and I was, you know, a little bit older then and he would come into my room at night. Just like before, he would do those same things to me.

Q. Exactly what did he do Leslynn?

A. He would come in my room late at night when I was sleeping and he would lie down—lie down next to me and make me take off my pajamas or he would take them off. Sometimes I wouldn't do it because I didn't want anything to happen, so he would take them off himself. If I ever tried to make any noises or anything like that, he would put his hand over my mouth. He just scared and threatened me that he'd hurt me or mom or something and he would fondle my chest and put his finger inside me or make me masturbate him and then he would have intercourse with me.

Q. When you are referring to the intercourse, you're referring to the same thing we talked about before, he inserted his penis in your vagina?

A. Yes. He would never stay in for—he was never in my room for a long period of time. When he would come in, he would come in and he would lie down and he would do those things and then he would get up and leave. And I just—it use to make me feel so awful and I use to have nightmares about it all the time.

Q. And where was he sleeping during this time frame; do you remember?

A. Mostly in the den. He slept in there a lot, not usually with my mom.

Q. How about in the summer of 1985, where were you?

A. The end of my junior year I decided that I needed to get away for the summer and I went to California and stayed with my grandma for most of the time. I just couldn't handle being there.

R. 188–189. Based on the foregoing evidence, the military judge found appellant guilty of a single rape occurring on or about or between May and June 1985.

The facts in this case are very similar to those faced by the Army Court of Military Review in *United States v. Glenn*, 29 M.J. 696 (ACMR 1989). In *Glenn*, the accused was charged, *inter alia*, with committing sodomy with his daughter "between about August 1982 and about August 1985." The statute of limitations barred prosecution of any offenses occurring prior to 16 September 1984. The evidence of record established that sodomy and other indecent acts occurred from time to time but did not establish the dates these acts took place. The Army Court set aside the conviction because of the inability to determine that an act of sodomy occurred at a time within the statute of limitations. *Glenn*, at 699.

This Court has also decided a case with analogous facts. In *United States v. Babcock*, 10 M.J. 503 (NCMR 1980), the accused was charged with possession, use and transfer of marijuana at "diverse times from September 1977 to early December 1977." The accused was convicted as charged even though the statute of limitations barred prosecution of offenses occurring during a portion of the time alleged. In setting aside these specifications we stated:

> We cannot speculate as to when the members believed the offenses, in fact, took place; similarly, reviewing the record as a whole, we will not substitute our judgment for that of the members, especially given the inability of the witness to give even a close, positive estimation of when the offenses occurred. As we read the record it is possible that the offenses took place before, rather than after, 13 September 1977. We are thus unable, either in law or fact, to affirm the findings of guilty as to specifications 1, 2 and 3 of Charge II.

*Babcock*, at 505.

We are confronted with the same dilemma in this case. While the evidence of record indicates that one or more rapes occurred during the May and June of 1985 time frame,[5] the evidence does not establish the precise date of any rape. The military judge convicted appellant of a single rape without specifying when he believed the rape took place. As in *Babcock*, we will not speculate as to when the military judge believed the rape occurred. Nor will we substitute our judgment for his. On the state of this record, the rape of which appellant was convicted could just as likely have occurred prior to 20 May 1985 as on or after 20 May 1985. Thus, we are unable in law or fact to affirm the finding of guilty as to Specification 7 of Charge I.

■ With respect to the remaining specification, Specification 8 of Charge I, appellant asserts that the evidence of record is legally insufficient to sustain a finding of guilty because there is no evidence to prove the essential element that the act of sexual intercourse was done by force and without consent. We turn to the record of trial for the limited evidence presented as to this specification.

Q. [T.C.] And when you returned, did any of these acts of sexual intercourse occur?

A. Yes.

Q. Do you remember when such an act occurred?

A. I remember one specific time. After I returned from California my parents decided to purchase a home in the White Oak area and that was the end

---

5. We note that the credibility of the victim was hotly contested, both at the trial level and on appeal, as to whether any rapes occurred at all.

Because of our resolution of this case we do not reach the issue of credibility of any witness in this case.

of August. We were moving out there and there was one night when my father and I took a load of furniture in a moving truck over to the house by ourselves and that was the last time that he ever had intercourse with me. It was at the house but no one was there.

Q. And what happened shortly after that time you had intercourse?

A. A couple of months later I found out that I was pregnant.

R. 189.

This was the extent of the evidence specifically introduced as to this specification and the evidence on which the military judge found appellant guilty of a single rape occurring in the White Oak area during the time frame alleged. It is obvious from the foregoing that the victim simply wasn't questioned by trial counsel concerning any force and lack of consent associated with this act of intercourse. During oral argument, the Government urged us to consider the threats and force accompanying prior acts of molestation, indecent assaults and rapes and argued that the force and lack of consent from these prior instances should be transferred to the incident in question.

Although the Government was barred by the statute of limitations from prosecuting appellant for eleven of the thirteen charged specifications, the Government was successful in introducing evidence of these prior acts of rape, carnal knowledge and indecent assault, as well as instances of molestations, to show a prior plan or scheme and a continuing course of conduct on the part of appellant toward the victim. This evidence established a definite pattern. The attacks always occurred in the victim's bedroom, late at night, after the victim had gone to bed. The victim testified that appellant would get in bed and lie down next to her, undress her, fondle her breasts and vagina and force her to fondle his penis. Ultimately, intercourse would result in many instances, particularly after the victim was older. The victim further testified that these acts were often accompanied by threats to harm her or her mother and that appellant would place his hand over her mouth if she attempted to scream.

We accept the Government's statement of the law as it relates to constructive force and consent to engage in sexual intercourse with someone standing *in loco parentis* and under the compulsion of long term parental duress. *See United States v. Torres,* 27 M.J. 867 (AFCMR 1989); *United States v. DeJonge,* 16 M.J. 974 (AFCMR 1983). The question here, however, is whether there exists in the record any evidence of such constructive force as it relates to this single incident of intercourse. If this act of intercourse fit the "pattern" which trial counsel so painstakingly established, we would have little hesitation in transferring the constructive force demonstrated by appellant during similar acts to the act in question. However, the evidence specifically establishes that the single act of intercourse in White Oak during the August/September 1985 time period does not conform to this pattern at all. Instead, this is a "one of a kind" incident where a rape is alleged to have occurred while appellant and the victim were moving furniture into a newly purchased home. Under these circumstances it was incumbent upon the trial counsel to present evidence as to force and lack of consent in this particular setting. Unfortunately, the trial counsel was so occupied with establishing evidence of uncharged misconduct and evidence of the victim's credibility that he did not properly focus on the elements of the viable specifications before the court. We find that there is insufficient evidence on the element of force and lack of consent to allow us to sustain appellant's conviction as to Specification 8 of Charge I.[6]

Accordingly, the findings of guilty of Specifications 7 and 8 of Charge I and the finding of guilty of Charge I are set aside and Charge I and Specifications 7 and 8 are dismissed. The sentence is set aside and all rights, privileges and property of which

---

6. Since the victim had attained the age of 16, carnal knowledge is not a lesser included offense capable of being sustained in this instance.

the appellant may have been deprived will be restored.

Chief Judge BYRNE and Judge FREYER concur.