UNITED STATES, Appellant,

v.

David A. MILLER, Aviation
Ordnanceman Airman,
U.S. Navy, Appellee.

No. 68,158.
CMR No. 91 2662.

U.S. Court of Military Appeals.

Argued Feb. 1, 1993.

Decided Sept. 28, 1993.

For the United States: *Lieutenant Richard J. Huber*, JAGC, USNR (argued); *Colonel T.G. Hess*, USMC (on brief).

For the Accused: *Lieutenant David P. Sheldon*, JAGC, USNR (argued); *Lieutenant Matthew L. Kronish*, JAGC, USNR (on brief).

*Opinion of the Court*

WISS, Judge:

After a military judge sitting as a special court-martial had convicted Miller, pursuant to his pleas, of two periods (over 5 *years* and over 7 *years*) of unauthorized absence, *see* Art. 86, Uniform Code of Military Justice, 10 USC § 886, he sentenced Miller to a bad-conduct discharge, confinement for 5 months, forfeiture of $500.00 per month for 5 months, and reduction to the lowest enlisted grade. Under the terms of a pretrial agreement, the convening authority suspended confinement exceeding 45 days; in all other respects, however, he approved the trial results.

On appeal, the Court of Military Review set aside the findings and sentence and dismissed the charges on the ground that the statute of limitations had run. Thereafter, under Article 67(a)(2), UCMJ, 10 USC § 867(a)(2) (1989), the Judge Advocate General sent the case to this Court, requesting us to answer the following question:

WHETHER THIS COURT SHOULD OVERRULE *UNITED STATES V. RODGERS*, 8 USCMA 226, 24 CMR 36 (CMA 1957), AND HOLD THAT THE STATUTE OF LIMITATIONS IS NOT A BAR TO TRIAL WHERE THE ORIGINAL CHARGE SHEET, PREPARED

AND RECEIVED IN TIME TO TOLL THE STATUTE, IS ATTACHED TO THE RECORD AS AN APPELLATE EXHIBIT, BUT A NEW CHARGE SHEET, RECEIVED OUTSIDE THE STATUTORY PERIOD, IS REFERRED TO TRIAL, AND TRIAL DEFENSE COUNSEL DECLINES TO OBJECT TO THE PROCEEDING ON THE NEW CHARGE SHEET BASED ON HIS KNOWLEDGE THAT THE ORIGINAL CHARGE SHEET HAD BEEN RECEIVED IN TIME TO TOLL THE STATUTE.

We now hold that the statute of limitations had been tolled on the charges and specifications of which Miller ultimately was convicted and that, to the limited extent that *United States v. Rodgers*, 8 USCMA 226, 24 CMR 36 (CMA 1957), may be read to be inconsistent with this opinion, it is overruled.

I

Miller began the first of his two unauthorized absences on September 17, 1978. On August 8, 1980, a sworn charge of desertion, in violation of Article 85, UCMJ, 10 USC § 885, was received by the summary court-martial authority. Miller terminated this absence by surrender to military authorities on November 19, 1983, and the charge—at some point modified to allege mere absence without leave, in violation of Article 86—was referred to a special court-martial the next month.

On January 3, 1984, Miller began his second period of unauthorized absence, and an additional sworn charge of desertion was received by the summary court-martial authority on May 2, 1984. Miller surrendered to military authorities and thereby terminated his absence on March 8, 1991.

Instead of the earlier sworn charges simply being amended to reflect the termination dates of these absences, the earlier-referred charges were redrafted. Additionally, the first absence, which had been sworn to as desertion but originally referred for trial as unauthorized absence, was again modified back to desertion.

These two charges were preferred and were received by the summary court-martial authority on April 25, 1991. On April 29, 1991, the referral of the first charge to a special court-martial was withdrawn. Ultimately, Miller went to trial on these two charges preferred, received, and referred in 1991.

■ Unauthorized absence is not a continuing offense; rather, it is committed on the date on which it is initiated. *United States v. Tunnell*, 23 MJ 110, 111 (CMA 1986); para. 10c(8), Part IV, Manual for Courts–Martial, United States, 1984. The statute of limitations for an unauthorized absence beginning before November 14, 1986, was 2 years. Art. 43(c), UCMJ, 10 USC § 843(c). The amendment extending the limitation period became effective for offenses committed beginning on November 14, 1986. Pub.L.No. 99–661, div. A, title VIII, § 805(c), 100 Stat. 3908 (1986). The running of the statute is tolled by "receipt of sworn charges ... by an officer exercising summary court-martial jurisdiction over the command" of which the accused is a member. Art. 43(b)(1). Thus, if the statute of limitations is to be avoided, sworn charges for Miller's two unauthorized absences must have been received by an officer exercising summary court-martial jurisdiction by September 17, 1980, and January 3, 1986, respectively.

As the earlier chronology makes clear, this was done. As that chronology also makes clear, however, the charge sheets containing those charges are not the charge sheet containing the charges for which Miller ultimately was tried. Instead, the charge sheet upon which he was tried and convicted at his special court-martial was not received by a summary court-martial authority until April 25, 1991—a good while beyond the 2–year statute of limitations.

Prior to Miller's arraignment at his court-martial, the military judge revealed that a conference under RCM 802, Manual, *supra*, earlier had been conducted, at which "counsel and I discussed amendments to the charge sheet, expected pleas,

and whether or not the statute of limitations had run as to the charge and the two specifications." When it came time for Miller to enter his pleas and defense counsel had indicated that he had no motions to make at that time, the military judge resurrected the matter of the statute of limitations:

MJ: Well, now, let's resolve this statute of limitations issue at this time. You may be seated.

Commander Owens, have you investigated the possibility that the statute of limitations has run? The reason I ask is because on the face of the charge sheet which refers these offenses to this court-martial for trial, the receipt was accomplished on 25 April 1991 by Lieutenant Robert Welch, the Staff Judge Advocate, and, of course, that would be outside the statute of limitations for both offenses.

DC: That's correct, Your Honor.

MJ: *I take it that you're satisfied that Appellate Exhibit II [the original charge sheets] properly tolled the running of the statute as to both offenses; is that correct?*

DC: *That's my understanding, Your Honor.*

MJ: Airman Miller, have you discussed this issue of the running of the statute of limitations with your counsel?

ACCUSED: Yes, sir.

MJ: Do you understand the discussion that I have just had with Commander Owens?

ACCUSED: Yes, sir.

MJ: After discussing this issue with your counsel, are [you] satisfied that the statute of limitations has not run as to, or, in other words, has not expired as to these offenses?

ACCUSED: Yes, sir.

MJ: *Now, is that because you believe that these other charge sheets comprising Appellate Exhibit II properly stopped the running of the statute of limitation?*

ACCUSED: *Yes, sir.*

MJ: Do you have any desire at this time to move for dismissal of the Charge and

the Specifications based on expiration of the statute of limitations?

DC: *Your Honor, I don't know how to—Are you asking if the accused waives?*

MJ: *I'm asking if he wants to raise that motion at this time.*

DC: *Okay, because I don't think we have anything to waive. I know the accused can waive the statute of limitations, but—*

MJ: *In this case, you're satisfied that there is no issue there?*

DC: *Yes, sir.*

MJ: *Very well, I just want to be sure that the accused personally agrees with you and does not desire to make that motion to the court.* Airman Miller?

ACCUSED: *I do not.*

MJ: All right. Do you have any questions now about that at all before we move on?

ACCUSED: No, sir.

(Emphasis added.)

## II

■ The Government's brief leaves no doubt as to what this certified question is about. At the outset, the Government acknowledges as follows:

In *United States v. Rodgers*, 8 USC-MA 226, 24 CMR 36 (CMA 1957), the Court of Military Appeals held that in the absence of an express waiver, the statute of limitations barred prosecution of an offense where the charge sheet referred to court-martial indicated that the officer exercising summary court-martial jurisdiction received the charges outside the statutory period even though among the "allied papers" of the record was another charge sheet that was received within the statutory period.

This decision was based on the absence of any express provision allowing re-drafting of the charge sheet outside the statutory period, and a desire to construe the statute of limitations liberally on behalf of an accused. *Rodgers*, 8 USCMA 226, 24 CMR at 39, 41. In a concurring

opinion, Judge Quinn also asserted that the charge sheet referred to trial was the only charge sheet upon which the trial could proceed. *Id.* at 41. Thus, the tolling of the statute of limitations by a prior charge sheet was irrelevant to the Court's review of the conviction. . . .

Subsequently, this Court has followed *Rodgers* in *United States v. French*, 9 USCMA 57, 25 CMR 319 (CMA 1958); *United States v. Arsenault*, 6 MJ 182 (CMA 1979); and *United States v. Salter*, 20 MJ 116 (CMA 1985). The Government concedes that this case is controlled by this line of precedent. Nevertheless, *Rodgers* and its progeny represent poor legal policy which should be overruled, and the Government submits that the facts of this case compellingly illustrate the error of the inflexible approach adopted in *Rodgers.*

Brief on Behalf of the United States at 4–5. Nonetheless, we remain of the view that the fundamental principles concerning the statute of limitations and the strict circumstances in which an accused will be found to have waived the protection of the statute are as sound today as they were over 35 years ago. If *Rodgers*—and the later cases cited by the Government that accepted and followed *Rodgers* in the absence of a forthright challenge to it—may be criticized, it is in this regard: In the context of resolving the tolling of the statute of limitations, that opinion apparently placed significant importance on the strict formality of which *charge sheet* was the vehicle for bringing the accused to trial, as opposed to which *charges* were laid against the accused at his trial.

The *Rodgers* Court was concerned with assuring that the charges facing an accused at a court-martial were timely preferred so as to toll the statute of limitations, as well as assuring that any waiver of that statutory requirement by an accused be knowing and expressed. *See United States v. Salter*, 20 MJ 116, 117 (CMA 1985). We are equally concerned with these protections today.

The question that squarely faces us in this case is whether adherence to these principles requires that the *charge sheet* that is the vehicle for carrying these charges to court-martial be the same *charge sheet* that was the vehicle for conveying the charges to the summary court-martial authority to toll the statute of limitations. The *Rodgers* majority said yes; under an importantly different set of circumstances in this case, we are of the other view.

Clearly, the requirement of the statute of limitations in Article 43 is that "sworn charges and specifications" be received by the summary court-martial authority within the prescribed period of time following commission of the offense. Thus, the timely receipt of "sworn charges and specifications" tolls the running of the statute as to those charges and specifications. The charge sheet merely is the form—the piece of paper—that contains those charges and that reflects that they were sworn and timely received; at least for purposes of this issue, that form has no independent importance of its own.

Accordingly, when an accused is arraigned on charges and specifications that appear might be barred by the statute of limitations, the critical question posed by Article 43 is whether the "sworn charges and specifications" were timely received, not whether the same piece of paper that contains those charges at the court-martial was the same piece of paper that conveyed those charges to the summary court-martial authority.

Of course, in the absence of the availability to the military judge of that original charge sheet, it would not seem possible for the military judge to answer that question assuredly. That was the situation encountered by the Court in *Rodgers*—the original charge sheet was "[f]ound among the allied papers in the record of trial," 8 USCMA at 228, 24 CMR at 38, but apparently had not been before the law officer (predecessor of the military judge) so that the law officer could assure himself that the charges and specifications facing the

accused at trial, indeed, were the same sworn charges and specifications that had been timely received by the summary court-martial authority.

In this case, though, the original charge sheet was before the military judge, was preserved as an appellate exhibit, and provided the military judge the means to satisfy himself that the "sworn charges and specifications" facing the accused had been timely received. Indeed, as the earlier-quoted colloquy reflects, the military judge, defense counsel, and Miller himself all were fully satisfied that the charges and specifications facing the accused in that court-martial were the same "sworn charges and specifications" that had been timely received by the summary court-martial authority to toll the running of the statute of limitations. Under these circumstances, the principles underlying *Rodgers* and the mandate of Article 43 are fully satisfied.

## III

The decision of the United States Navy–Marine Corps Court of Military Review is set aside. The record of trial is returned to the Judge Advocate General of the Navy for remand to that court for further review under Article 66, UCMJ, 10 USC § 866.

Chief Judge SULLIVAN and Judges COX, CRAWFORD, and GIERKE concur.